## KIRKPATRICK v. BAKER et al.

No. 17883.  Opinion Filed Feb. 21, 1928.
Rehearing Denied Feb. 12, 1929.

Billups & Billups and Sandlin & Winans, for plaintiff in error.

Womack, Brown & Cund and John C. Head, for defendants in error.

CLARK, J.  Plaintiff in error was plaintiff below; defendants in error were defendants below.  Parties will be referred to as plaintiff and defendants.

Plaintiff, in the court below, alleged that on or about May 4, 1918, he and defendants entered into an oral agreement to engage in a joint adventure to procure oil and gas mining leases for development and sale, each party contributing equally to the expense of such joint adventure.

Pursuant to the agreement, a departmental lease was acquired on what is known as 'the Francis Fobb tract of land in Stephens county, Okla., and this is the lease in question.  All the parties paid their equal share of the rental coming due each year until the rental paying time, September 5, 1924, when plaintiff, for lack of funds, his health being impaired, failed to pay his share of the rentals.  In 1924, before paying time in 1925, oil was found in paying quantity and thereafter no rentals were due or necessary.  After oil was found in paying quantities, the plaintiff was denied any right or interest in the lease by his associates.

The lease by agreement of all parties was taken in the name of the defendant C. P. Baker, who paid the rentals from year to year and received contributions from the other joint owners.  He paid the rentals in 1924 as usual, but never made any demand on the plaintiff for his proportionate part of said rentals, but seeks to forfeit plaintiff's interest without notice by reason of his failure to pay his proportionate part of the 1924 rentals.

Plaintiff prayed that he be decreed the owner of a one-fourth interest in said lease; for an accounting and equitable relief in general.

The defendants answered by general denial, the statute of frauds, limitation, estoppel, abandonment, and the further plea that at the time the lease was taken out there was an agreement made that failure to pay would forfeit the interest of the defaulting partner to those willing to carry on the venture.

Plaintiff filed a general denial to all affirmative allegations in defendants' answer.

On the issues joined a trial was had.  The court found for the defendants.  Plaintiff appealed.  Plaintiff makes eight assignments

of error, all presented in brief in one general proposition, that the judgment of the court is contrary to the law of the case and against the weight of the evidence.

Kirkpatrick, Baker, Jones and Craig had, prior to 1918, all lived in Idabel, Okla., and acting together, each paying one-fourth of the cost, had taken two oil and gas mining leases, one from Foston Wilson, a full-blood Choctaw Indian, which was taken to plaintiff, Kirkpatrick, and one from Francis Fobb, a full-blood Choctaw Indian, which was taken to defendant Baker. Rentals were paid on said leases up to and including 1923, each party paying one-fourth. On August 4, 1924, Kirkpatrick released the tract in his name. Baker objected and asked Kirkpatrick not to release this tract, which was the north half and the tract held by Baker was the south half of section 12. Kirkpatrick left Idabel September, 1923, went to Kansas City, Nebraska, California, and back to Kansas City, then to Hot Springs, Ark. Plaintiff saw in the paper an account of oil being produced from the Francis Fobb lease. This was the first he knew of oil being produced from said lease and was after the second rental paying period had passed.

By agreement Ola R. Craig was made party defendant and cause dismissed as to J. M. Craig. On August 2, 1924, defendant Baker wrote to Kirkpatrick at Kansas City, Mo., the letter in part as follows:

"We now own the south half of this section less 20 acres to Roy and Harry Baker, so if you wish to pay your part of the rentals, send me check for the amount or sign the inclosed statement. P. S. If enclosed disclaimer does not suit you, draw one that does. Send and forward to me."

The inclosed statement was an instrument disclaiming an interest in the lease in controversy. This letter was delivered at the office of father of plaintiff in Kansas City, Mo., but was not received by plaintiff until after oil was discovered on said lease.

The court made the following findings of fact:

"The court is of the opinion that the contract between the parties to this action— that is, Kirkpatrick, Jones, Baker and Craig —to begin with, was with respect to the leases on both the north and south halves of the section, though the leases were actually procured from the Indians at different times. But I am not satisfied that all the parties agreed that a failure on the part of one party to pay his part of the rentals when due would forfeit his interest to the parties who might make payment.

"The parties paid their pro rata part of the rentals on both leases up to and including the payment for the year 1923. Just prior to the rental paying period in 1924, the court is of the opinion that Mr. Kirkpatrick made up his mind to quit the deal altogether, and that his conduct was such as to give notice to the other parties that he was abandoning it. I am of the opinion that just prior to the rental paying period. in 1924, the plaintiff left the home of his father in Kansas City and went to Nebraska, as testified, after having discussed his interests in this affair with his father, and I think it probable that the understanding he had with his father was to the effect that he was quitting the deal altogether, for his father did not think enough of the letter of Mr. Baker, asking the plaintiff to pay rentals on the lease covering the south half to answer it, or to forward it to the plaintiff for answering. According to Mr. Kirkpatrick's testimony, he had sufficient money to have paid his part of the rentals had he desired to do so. Though he had plenty of money to travel around over the country considerably, he made no offer to pay his proportion of the rentals in 1924 or in 1925. He never even inquired about the affair. Were this a suit by the defendants to recover from the plaintiff for a portion of the rentals paid on his behalf by them, they could not recover, because his conduct was such as to give them notice that he was abandoning the project.

"At first I thought the defendants were bound by the testimony of Mr. Jones to the effect that in his opinion the lease on the acreage released by Mr. Kirkpatrick in 1924 had a market value of $25 an acre. But, on reflection, the conduct of all the parties contradicts this opinion. At that time five wells had been drilled just north of the center line running east and west through the section. Mr. Kirkpatrick held title to three forties on the north side of the section; Mr. Jones at that time held the assignment for a contractor who had drilled a well on the 80 acres just south of the lease held by Kirkpatrick and adjoining it and the lease in question. Neither Mr. Jones nor the contractor thought enough of the value of this assignment to have it transferred on the records of the department or to pay rentals, but allowed it to lapse.

"Under the circumstances, I am of the opinion that what Mr. Baker wrote Mr. Kirkpatrick about the value of the lease in the summer of 1924 was correct; that the lease was not worth at that time more than the rentals actually due and required to be paid to keep it alive. To me this case differs from those where the parties have made substantial payments on property, and where the courts have given defaulting partners their interests even after failure to perform their duty in making payments.

"This was a purely speculative transac-

tion, the lease in 1924 was not worth any more than the rentals actually paid by Jones, Baker and Craig. Kirkpatrick understood all of this and released the lease held in his own name, refused to make his payment on the lease in question, knowing it would be forfeited if none of them paid, and, according to his testimony, paid no further attention to the project until the fall of 1925, long after the second rental period had passed, when he discovered from newspaper reports that oil had been found on the land. Then, without saying a word to his former associates, he brought this suit. Had he not felt that his conduct had been such as to lead the others to believe that he had abandoned the project, I think it would have been probable that he would have attempted to adjust the matter with them before bringing this suit.

"Under the evidence in the case I feel that the plaintiff is not entitled to recover, and for the same reasons I feel that the defendants are not entitled to recover on their cross-petition."

It is admitted that plaintiff owned an interest in the lease in question, and that Baker was acting for all parties at the time the lease was executed to Baker.

Plaintiff contends that the finding of the court that prior to the rental paying period, which was September 5, 1924, plaintiff made up his mind to quit the deal altogether and that his conduct was sufficient to give notice to the other parties that he was abandoning it, is against the clear weight of the evidence. Was his conduct sufficient to give notice to the defendants that he was abandoning the enterprise, and when did he give this notice to defendants?

On August 20, 1924, Baker wrote plaintiff at Kansas City, Mo., the letter acknowledging that plaintiff owned an interest in the enterprise. The only conduct that could be construed as an abandonment on the part of the plaintiff was his failure to remit his proportionate part of the rentals which were due September 5, 1924. The evidence discloses that Baker had formerly paid the rentals and then called on his copartners or coadventurers to contribute, each paying his share. After Baker had paid the 1924 rentals he made no demand of plaintiff that he contribute his share. Plaintiff's failure to make inquiry could have been attributed to his confidence in his friends and associates that his interests would be protected by them.

As to an abandonment of the enterprise, plaintiff certainly had an interest in this estate. It was held by Baker for the mutual benefit and profit of the joint adventurers, and we fail to find any evidence in the record, nor has any been called to our attention,

which supports the finding of the trial court that plaintiff abandoned this enterprise.

It is contended by defendants that the release of the lease in plaintiff's name estopped plaintiff to assert any right in the lease in question and that plaintiff does not come into court with clean hands. The trial court found that at the time said lease was released it was not worth any more than the rentals due. Plaintiff did not acquire any advantage to himself by the release of the lease. He was acting for his coadventurers or copartners. His action did not inure to his profit; he did not release it to obtain any advantage to himself; he was acting in the interests of the enterprise, and so far as the record discloses used good judgment. This action on the part of the plaintiff did not and could not forfeit his right and interest in the lease in question. He was no doubt using his best judgment.

The court in its findings of fact finds that:

"This was a purely speculative transaction. The lease in 1924 was not worth any more than the rentals paid by Jones, Baker and Craig. Kirkpatrick understood this and released the lease held in his own name, refusing to make this payment on the lease in question, knowing it would be forfeited if none of them paid."

This finding of the court is not supported by the evidence. The lease in question could not be forfeited for failure to pay rentals. It was a lease on full-blood Indian land, approved by the Department of the Interior. Said contract provided:

"Nor shall the lessee, because of any subsequent failure or cancellation thereof, nor shall the lessor be relieved of the obligation to pay said rentals annually when they become due by reason of any subsequent failure or cancellation of this lease."

Plaintiff and defendants were required to execute a bond, guaranteeing payment of all rentals and royalties becoming due on this lease, and under the rules of the Department the lease could not be forfeited, and could only be canceled after all rentals due were paid. The giving of this bond by Baker and his coadventurers placed a legal liability on plaintiff to pay his share of the rentals and a mere failure to do so did not release him from his liability.

Did defendants have a right to declare that plaintiff had withdrawn from the enterprise? This court, in the case of Dike v. Martin, 85 Okla. 103, 204 Pac. 1106, in the sixth paragraph of the syllabus, said:

"If either party to a joint adventure has refused to substantially perform his obligations, his associates may terminate their re-

lations with him and carry out the enterprise to his exclusion, and if for this, or any other valid reason, they choose to terminate the relationship, they could do so only by giving notice to him that the relationship was then and there ended."

No notice was given plaintiff that he was to be excluded by defendants.

Defendants contend that there was an agreement between all the parties that a failure on the part of one party to pay his share of the rentals when due would forfeit his interest to the parties who might make the payment. The court found this issue against the defendants. It was an affirmative plea on the part of the defendants, and the court did not find that such a contract existed, but found to the contrary. Defendants cited and relied on the case of Adams v. McGraw, 99 Okla. 65, 225 Pac. 980. This case is distinguished from the case at bar in this: In the case of Adams v. McGraw, a written contract was involved which had this provision:

"It is further agreed that should any of the parties hereto default in the payment agreed to be made by him, then and in that case, the other party may make the payment and secure thereby the interest of the party defaulting in his payment, and the party so defaulting shall convey to the other party all of his interest in and to the above described property by a warranty deed."

In the case at bar the court found there was no such agreement between the plaintiff and defendants, and this finding is not against the clear weight of the evidence. If Baker had relied on this agreement that a failure of Kirkpatrick to pay his part of the rental would forfeit to those paying this interest, he would not have sent Kirkpatrick the instrument to be executed disclaiming any interest in the lease in question.

It is contended by defendants that when plaintiff failed to make his payment of rentals due in 1924, he forfeited his claim and was legally excluded from the enterprise. If defendants wished to exclude plaintiff from the enterprise, it was their duty to notify plaintiff and give him a chance to carry out his part of the enterprise. The defendants owed the plaintiff the duty of protecting his interests, which were held by Baker in trust for plaintiff, and plaintiff could not be excluded without notice.

In the case of Cassidy v. Gould, 86 Okla. 217, 208 Pac. 780, the fourth paragraph of the syllabus says:

"The relationship between the parties to a joint adventure is fiduciary in its character and will require the utmost good faith in the dealings of the parties with each other."

Did defendants act in good faith with plaintiff in attempting to forfeit his interest in this estate without notice and without demand on him for the amount claimed to be due? We think not. Plaintiff had paid his share of the rentals on the two leases for several years. He had paid his share of the lease in question since 1918. When Baker paid the rentals for 1924, he paid them for the use and benefit of his associates. This was a partnership in a sense. They were associated together for mutual profit, were liable for losses incurred in this particular enterprise, and the rights and liabilities of the parties are determined upon the same principles as are applied by courts of equity for partnership transactions.

In the case of McKeel v. Mercer, 118 Okla. 66, 246 Pac. 619, in the body of the opinion this court said:

"Until the adventure has terminated or the enterprise has been abandoned a joint adventurer cannot exclude his associates from an interest in the property by purchasing it for his individual account."

Baker, in the exercise of good faith with his associates, could not exclude them from the enterprise without a demand that he be reimbursed or without notice to his associates of his intention to exclude them. There is no evidence in the record which supports the finding of the court that plaintiff had abandoned the enterprise and gave notice to the defendants of his intention to abandon the same. It is true that the evidence of the defendants was to the effect that when the rentals were paid in 1923 plaintiff said he was not going to pay again. Plaintiff denied this. Defendants did not rely on this as abandonment; did not consider that plaintiff had abandoned the enterprise. Defendant Jones testified that Mr. Kirkpatrick lost his interest in the estate when he refused to pay the rental or royalties on the lease, but admitted that no demand was made on plaintiff to pay his proportionate part. So Jones and Baker, two of the interested parties, or coadventurers, admitted that up until August, 1924, plaintiff, Kirkpatrick, had an interest in the lease in question. So the contention of the defendants that Kirkpatrick abandoned the lease at the rental paying period in 1923 is not supported by the evidence.

Defendants contend that plaintiff has been guilty of laches, therefore he cannot recover. The defendants were not injured by plaintiff's delay. Laches is not only a delay, but a delay which works a disadvantage to

another. The failure or delay of the plaintiff in asserting his claim worked no detriment to the defendants.

We have examined the record carefully. This being a purely equitable case, and the finding of the court that plaintiff abandoned the lease a short time prior to rental paying period in 1924, and that his conduct was such as to give defendants notice of this, is against the clear weight of the evidence, and the court erred in so finding. The cause is therefore reversed and remanded, with directions to the trial court to enter judgment for plaintiff for his one-fourth interest in the lease and for an accounting and such other and further relief as he is, under the law and facts, entitled to.

BRANSON, C. J., MASON, V. C. J., and HARRISON, PHELPS, LESTER, and RILEY, JJ., concur.

Note.—See under (1) 33 C. J. p. 846, §16. (2) 33 C. J. p. 851, §36; 15 R. C. L. p. 501; 3 R. C. L. Supp. p. 461. (3) 33 C. J. p. 850, §28. (4) 21 C. J. p. 217, §217, (5) 4 C. J. p. 900, §2869; 2 R. C. L. p. 203; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 73. (6) 4 C. J. p. 902, §2871.