E. G. OMOHUNDRO V. FRANK D. MATTHEWS, JR., ET AL.

No. A-7115. Decided October 5, 1960.
Rehearing Overruled December 31, 1960.
(341 S.W. 2d Series 401)

*B. F. Whitworth,* of Jasper, *Fulbright, Crooker, Freeman, Bates & Jaworski* and *W. H. Vaugh, Jr.,* of Houston, for petitioner.

*Lloyd N. Matthews* and *Ernest S. Fellbaum,* of Houston for respondents.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

Frank D. Matthews, Jr., and Ray James Thompson, Jr., brought suit against E. G. Omohundro to recover an undivided 1/3rd interest each in a 1/16th overriding royalty interest which Omohundro acquired from Slick Oil Corporation. The trial court decreed that a constructive trust existed in favor of Matthews and Thompson to the interests they claimed. The Court of Civil Appeals has affirmed that judgment. 317 S.W. 2d 771. We here affirm those judgments.

The record shows that Omohundro learned of the possibility of obtaining an assignment (commonly called a "farmout") from Humble Oil and Refining Company of oil and gas leases in Jasper County in return for a promise of drilling and operations. He contacted Matthews and Thompson in April, 1955,

and inquired whether they thought the area sufficiently prospective to merit the acquisition of such interests. Matthews and Thompson were geologists who had been associated with Omohundro in previous transactions. Upon investigation of data available to them, they decided the area was promising. There is testimony that three men orally agreed to use their efforts to obtain exploration and development of leases and to divide the profits equally.

Humble, at Omohundro's request, agreed in a letter of May 13, 1955, to assign rights in several oil and gas leases in the area to Omohundro. Humble reserved rights not important here. One of such leases was the N. B. Hughes lease. It was upon this property that the principal operations were conducted. The parties hereto then undertook to find a person who would conduct drilling operations or finance the drilling of a well.

Thompson found such a person in Mr. Frank Sharp. Thompson introduced him to Omohundro. Sharp agreed to drill a well on the Hughes lease. The leases were tentatively assigned to Sharp with an overriding royalty of 1/16th being reserved in Omohundro's name.

In June of 1955, Omohundro acknowledged the interest of Frank Matthews and Ray Thompson in a letter which read:

"Dear Ray, This letter is written evidence of the fact that you and Frank each own one third interest, and that I own a remaining third interest in the overriding royalty that is reserved to me under the terms of my letter to Frank W. Sharp under date of June 10, 1955. This letter and agreement thereunder were made under the terms of letter agreement of Humble letter to me under date of May 13, 1955. At the proper time, I will make the necessary assignments to each of you upon your request."

Matthews and Thompson alleged in their petition that, "Pursuant to the wishes of Sharp and the agreement between the Plaintiffs and Defendant [Omohundro], the respective interests of the parties [in the Sharp transaction] were taken in the name of the Defendant [Omohundro], and the well drilled was known as the Omohundro Hughes No. 1 well."

The Sharp well was dry and was abandoned in July of 1955. Thereafter, Omohundro, Thompson and Matthews sought others who would explore the land. This time it was Matthews who pro-

cured a driller. He met with Mr. J. P. Owen who agreed to pay $5,000 for an assignment of the leases, to drill a well at his own expense, and to allow the reservation of a 1/16th overriding royalty in Omohundro's name. Omohundro took no part in these original negotiations.

Matthews called Omohundro who was then in New York. When the matter was explained to hi mby Matthews, he approved of the transaction. The $5,000 was paid by Owen to Matthews who, after paying Omohundro for his expenses, agreed to divide the balance three ways. Matthews testified that the three purchased other royalty in the area with the money, "as we had always agreed to split up the profit from getting wells drilled on that area." That royalty is not involved here, but it is relevant that Matthews actually purchased it and paid for it by his check, but had the royalty placed in Omohundro's name "to keep the group together and to show good faith."

The pleadings of Matthews and Thompson again alleged that Humble leases had been conditionally assigned to Owen "and the partners retained a 1/16th override * * *" and that the interests of the plaintiffs and defendant were taken "in the name of E. G. Omohundro in accordance with the original agreement between the parties hereto."

On December 14, 1955, Omohundro executed a written assignment to Matthews' and to Thompson's assignee of a 1/3rd interest each in the reserved overriding royalty and in the reversionary interest in the Owen transaction and acknowledging that such royalty and reversionary interest were owned equally by the three of them.

It was Omohundro's contention that this ended his association with Matthews and Thompson, but the jury found otherwise. It found that the agreement was not terminated by mutual consent on December 14, 1955, and was in existence on March 23, 1956.

The Owen well was dry and was abandoned on December 28, 1955. Since the Sharp and Owen wells were nonproductive, interest in the area declined substantially. All of Humble's leases in this part of the farmout area were allowed to lapse, with Omohundro's consent, as their delay rental dates were reached. The Hughes lease was due to expire on March 24, 1956.

Earlier in March of 1956, prior to the expiration of Humble's

lease on the Hughes tract, Omohundro and Slick Oil Corporation (hereafter called Slick) agreed that Omohundro would obtain leases in the area for Slick in return for an overriding 1/16th royalty which Omohundro was to receive. Later Slick decided to use its own landmen to obtain the leases. Omohundro agreed to assist them.

On March 24, 1956, Humble, with Omohundro's consent, allowed its Hughes lease to expire. On March 28, 1956, four days later, Slick secured a lease on the Hughes and other tracts which had been contained in the farmout assignment from Humble to Omohundro in its letter of May 13, 1955. In assisting Slick, Omohundro used information he had obtained in his association with Matthews and Thompson. He used in negotiating with Slick a copy of a well-log of the Sharp well which he borrowed from Thompson. Neither Thompson nor Matthews were informed of the negotiations between Omohundro and Slick.

On June 28, 1956, Slick transferred a 1/16th overriding interest in these tracts to Omohundro. Matthews and Thompson point out that since they knew nothing of the Slick transaction until it was consummated, there could have been no agreement between them and Omohundro as to whose name such interest would be taken in. Matthews and Thompson claim in this suit that they are each entitled to a one-third of the interests thus acquired by Omohundro from Slick. Their pleadings allege, among other things, the joint venture, breach of confidential relationship, use of knowledge obtained in the joint venture to obtain a private advantage, and that the consideration paid by Omohundro for the 1/16th overriding royalty from Slick was the knowledge acquired from the joint enterprise which was the property of the joint enterprise.

The jury found, among other things, that Omohundro, Matthews and Thompson entered an agreement in April, 1955, to use their joint efforts to obtain development of the area described in the Humble farmout letter, and to share all profits and benefits equally; that they did not enter into a series of separate agreements; that the agreement was not solely to share equally in the overriding royalty interests reserved in the Sharp or Owen wells; that such agreement was to extend for such length of time as any of the parties owned interests in the Humble farmout leases; that the agreement between the parties had not been terminated by mutual agreement, had not been performed, and was in force on December 14, 1955, and on March 23, 1956; that the purpose of the joint efforts had not been fully com-

pleted when the Owen well was found to be dry and abandoned; that Omohundro allowed the Hughes lease to Humble to expire by nonpayment of rentals in order to comply with his agreement with Slick; that Omohundro used information and materials acquired in his activities with Matthews and Thompson to induce Slick to make the deal with him; and that Omohundro failed to give a full account to Matthews and Thompson of his negotiations with Slick until after March 23, 1956.

The Texas Trust Act, as applicable here, provides in section 7 that a *trust* in relation to, or consisting of, real property shall be invalid unless created, established or declared by a written instrument.[1] The Act in section 2 defines a *trust* as follows:

" 'Trust' for purposes of this Act means an express trust only, *and does not include (1) resulting or constructive trusts* * * * ."

The Act does not define the terms *express, resulting,* or *constructive* trusts. It does provide in section 7 that express trusts may be created in six specified ways, none of which particularly fits the fasts of this case.

We shall assume, however, that under the pleadings of Matthews and Thompson that an express trust was created when the parties allowed the leases (the Sharp and Owen transactions) to be placed in Omohundro's name "pursuant to their agreement." The question then arises whether that ends the matter under the Texas Trust Act which says oral express trusts shall be invalid. That Act also says that it *does not apply to constructive or resulting trusts.* A constructive trust is not inhibited by it. There is nothing in the Act which restricts or limits the meaning of "constructive trusts" under the law as they had previously been defined by the courts.

■ So the question arises whether a constructive trust may be imposed to prevent unjust enrichment of one in a confidential relationship even though such person refuses to perform an unenforceable express trust? Taking the case one step further, is it the intention of the Trust Act to prohibit the courts from declaring Omohundro a constructive trustee when, had the parties not so agreed, Omohundro would have been declared to be a constructive trustee? We think that under *Mills v. Gray* and other authorities set out below, such is not the intention of the Act. The courts, so doing, will not be enforcing an oral contract but

1.—Article 7425b, Vernon's Texas Civil Statutes Annotated.

will be enforcing a constructive trust based upon the violation of a fiduciary duty and to prevent unjust enrichment.

■ A constructive trust does not, like an express trust, arise because of a manifestation of intention to create it. It is imposed by law because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property.[2] It is used, among other things, to adjust rights of partners.[3] The same basic rules, in situations such as we have here, apply to joint venturers.[4]

■ That the allegation of, or the presence of, an agreement as to the title to the property does not prohibit the imposition of a constructive trust (if it would otherwise be imposed) is illustrated by the decision of this Court in Mills v. Gray (1948), 147 Texas 33, 210 S.W. 2d 985. As applicable here, the facts there were these: Eva and Ben Mills had a homestead on Broadway Street. They had 3 sons and a daughter: Ben, Jr., Mabel, George, and Harry Mills. The husband died, and Eva then married J. L .Gray. Thereafter Eva and J. L. Gray had marital difficulties. They and the other three children conveyed the Broadway house, without written condition, to Eva's fourth son, Harry Mills. There was no written express trust in Harry. Eva and J. L. Gray were then divorced, but later they remarried. While they were divorced, Harry sold the house on Broadway and purchased a house on Riverside. The Riverside house was purchased in part with funds received from the sale of the Broadway house and funds furnished by Eva. The opinion of this Court then says:

"The respondents [Evan and J. L. Gray et al.] alleged and attempted to prove, that the Broadway property was conveyed to Harry G. Mills only in accordance with the plan of settling the community affairs of Mr. and Mrs. Gray, and that it was understood by all concerned that the property would be held by him in trust for the benefit of his mother and the other children, and that after the divorce he would reconvey it to her, or if sold, he would divide the proceeds * * *.

"The petitioners [Harry Mills et al.] denied the existence

2.—Restatement of the Law of Restitution, section 160 and section 194; Restatement of Trust Statement 44, 45.

3.—Logan v. Logan, (1941), 138 Texas 40, 156 S.W. 2d 507; Murrell v. Mandlebaum (1892), 85 Texas 22, 19 S.W. 880; 32 Texas Jur. 282-284, Partnership, section 40 Am. Jur. 200, Partnership, section 103; 68 C.J.S. 507, Partnership, section 72.

4.—Fitz-Gerald v. Hull, 150 Texas 39, 237 S.W. 2d 256, at 264, 265; 30 Am. Jur. 965, section 38, quoted in Fitz-Gerald v. Hull, supra.

of a trust and alleged that the Broadway property was conveyed to Harry G. Mills under an agreement that he would support and maintain his mother * * * and furnish her a home for the remainder of her life * * * ; that he was ready, able and willing to carry out his agreement * * *."

Then Harry Mills alleged that "if any trust existed, the same was an express trust" which was void and unenforceable under section 7 of the Texas Trust Act and Statute of Frauds. In the trial before the jury Eva Gray et al. tried to prove the existence of the trust by offering evidence of the agreement and understanding "prior to and at the time of the conveyance of the Broadway property to Harry G. Mills." The testimony was excluded, and the jury found that the property was conveyed to Harry Mills in return for his promise to care for his mother, Eva Gray. The opinion of this Court then states:

"The Court of Civil Appeals reversed and remanded the judgment * * * upon the theory that the excluded testimony was admissible since that court concluded that the agreement, if established, created a constructive trust and thus was not affected by the Texas Trust Act." 210 S.W. 2d at 987.

After a full discussion, this Court affirmed the judgment of the Court of Civil Appeals and said: "Ordinarily a parol agreement between a grantor and a grantee that the property conveyed shall be held in trust * * * is an express trust which cannot be enforced * * * . But that rule has its exceptions.

The Court concluded: "Under these principles [discussed in the opinion], if the purported agreement and family arrangement had been established as true, *a constructive trust would have arisen by reason of the confidential relation between the parties* which would not fall within the prohibition of the Statute of Frauds or the Texas Trust Act. The testimony was therefore erroneously excluded by the trial court." 210 S.W. 2d 988 and 989.

The holding in Mills v. Gray is in accordance with the rules in other states. Most of them have provisions similar to section 7 of our Trust Act in section 7 of their Statute of Frauds.[5]

---

5.—For some reason, Texas did not adopt or enact section 7 of the Statute of Frauds. Gittard, "Express Oral Trusts of Land in Texas," 21 Texas Law Rev. 719, (1943). Since Texas did not have section 7 of the Statute of Frauds, our courts, before the enactment of its equivalent, the Texas Trust Act, did not hesitate to enforce an oral agreement of a joint venturer to hold property for the benefit of all. Sec., e.g., Newton v. Gardner (Texas Civ. App. 1940, 225 S.W. 2d 598, ref.,

Secton 7 of the Statute of Frauds reads in part:

"That * * * all declarations, or creations of trusts, or confidences, of any lands, tenements, or hereditaments shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust * * * *or else they shall be utterly void and of none effect.*"

Among the authorities cited and approved by this Court in Mills v. Gray, in the light of Sections 7 of the Statute of Frauds and the Texas Trust Act, are the following:

"There are numerous cases to the effect that where at the time of the transfer the transferee was in a confidential relation to the transferor, and the transferor relied upon his oral promise to reconvey the land, he is chargeable as constructive trustee of the land for the transferor. In these cases it is held that the constructive trust will be imposed even though at the time when he acquired the property the transferee intended to perform his promise and was not therefore guilty of fraud in acquiring it; and even though the transferee did not take improper advantage of the confidential relation in procuring the transfer and was not therefore guilty of using undue influence. The abuse of the confidential relation in these cases consists merely in his failure to perform his promise." 1 Scott on Trusts 253, section 44.2.

The opinion also quotes 54 American Jurisprudence 178, section 233:

"A constructive trust arises where a conveyance is induced on the agreement of a fiduciary or confidant to hold in trust for a reconveyance or other purpose, where the fiduciary or confidential relationship is one upon which the grantor justifiably can and does rely and where the agreement is breached, since the breach of the agreement is an abuse of the confidence, and it is not necessary to establish such a trust to show fraud or intent not to perform the agreement when it was made. The tendency of the courts is to construe the term 'confidence' or 'confidential relationship' liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof."

n.r.e.; Thompson v. Corbin, Texas Civ. App. 1940, 137 S.W. 2d 157, no writ history; Grennan v. Forgerson, Texas Civ. App. 1937, 101 S.W. 2d 885, err. dis'd.; Martin v. Texas Co., Texas Civ. App. 1935, 89 S.W. 2d 260, dism'd agr., and Lanier v. Looney, Texas Civ. App. 1928, 2 S.W. 2d 347, err. ref'd. See also Comment, "Constructive Trusts Under the Texas Trust Act," 6 Southwestern L. J. 99 (1952), and Comment, "Resulting and Constructive Trusts in Realty," 1 Baylor L. Rev. 296 (1949).

The opinion quotes also section 44 of the Restatement of Trusts which is to the same effect.

The following from section 194, Comment d., of the Restatement of Restitution is particularly pertinent:

"Where one person orally undertakes to purchase land on behalf of another, it may be urged that the other cannot enforce a constructive trust because the undertaking is oral and there is no compliance with the provisions of the Statute of Frauds. *The answer to this objection is that the other is not enforcing an oral contract, but is enforcing a constructive trust based upon the violation of fiduciary duty.*

"\* \* \* \*

"The rule stated in this Section is applicable where one person agrees to purchase property on behalf of another, whether he undertakes to purchase it in the name of the other, or in his own name, or in their joint names." (Emphasis added.)

Illustrative of cases from other jurisdictions in cases involving similar facts are Sample v. Romine (Miss. 1942), 8 So. 2d 257, and Kirkpatrick v. Baker (Okla. 1928), 276 P. 193.

Constructive trusts have been held to apply where there have been oral promises, or in spite of oral promises, in a number of related situations.[6] Perhaps the most conspicuous of such cases are those dealing with partnership property.[7]

---

6.—See, e.g., Ames, "Constructive Trusts Based Upon the Breach of an Express Oral Trust of Land," 20 Harvard L. Rev. 549 (1907); 1 Scott on Trusts, section 45.2.

W. O. Huie, in discussing the influence of trust law on community property law, makes the following observations:

"Accordingly, although it was held that a gift would be presumed when the husband conveyed community land to the wife, the presumption could be rebutted and an express trust in favor of the community could be established by evidence that the wife had orally agreed at the time of the conveyance that she would hold legal title in trust for the community.

"Since 1943 the Texas Trust Act has required that express trusts of land be in writing, but the Act does not apply to resulting and constructive trusts, *and in many of the situations where an oral express trust was enforced prior to the Act, the courts will be able to reach the same result now by classifying the trust as resulting or constructive.*" (Emphasis added.) Huie, "The Community Property Law of Texas" (appearing in Vol. 13, Vernon's Texas Civ. Stat. Ann. 1951), p. VII, at p. XII.

7.—See, e.g., 32 Texas Jur., 282, at 283, Partnerships, section 40: "Land will be regarded as held in trust for the firm by agreement or by operation of law where it has been brought into the partnership \* \* \* though title be held by the members as cotenants or by some and not all of them." See also cases cited supra Note 3.

That a relationship of trust and confidence exists when circumstances present here is clearly established under MacDonald v. Follet (1944), 142 Texas 616, 180 S.W. 2d 334, Fitz-Gerald v. Hull (1951), 150 Texas 39, 237 S.W. 2d 256, and Smith v. Bolin (1954), 153 Texas 486, 271 S.W. 2d 93.

MacDonald v. Follett was decided before the enactment of the Texas Trust Act. However, that case holds that a constructive trust arises under facts which are similar and stands for the proposition that parties similarly situated are in a fiduciary status of trust and confidence. There MacDonald and Follett, as agents, negotiated for an oil and gas lease and procured for themselves an overriding royalty of 1/32nd which they agreed to share. The lease expired. Follett testified that the two agreed to work for a renewal of the lease with the same sharing of the ovrride. MacDonald got the lease renewed but took the override in his own name. The second lease also expired. But before it did, MacDonald worked up "top leases" and procured a 1/32nd override. Justice Hickman there held for the Court:

"We experience no difficulty in arriving at the conclusion that the facts above narrated * * * establish that a relation of trust and confidence existed between Follet and MacDonald prior to the execution of the 1938 top leases." 180 S.W. 2d at 337.

The Court then held, as applicable here, that, "If a relation of trust and confidence existed between MacDonald and Follett with reference to the overriding royalty under the 1937 leases, then such relationship was carried into the 1938 leases executed during the existence of that relationship." 180 S.W. 2d at 338. The Court quoted with approval 3 Pomeroy's Equity Jurisprudence, (4th ed.) section 1050, to the effect that a person in a fiduciary relationship could not, during the existence of a lease, take a renewal thereof for his own benefit to the exclusion of his fellows, but that a lease so taken inures to the benefit of all. The Court held that the facts alleged would raise a constructive trust.

A relationship of trust and confidence and a constructive trust were also held to exist where parties went together to obtain and procure exploration of "farmout" oil and gas leases under a written agreement in Smith v. Bolin (1954), 153 Texas 486, 271 S.W. 2d 93, which cited the leading case of Meinhardt v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1

Omohundro's counsel contends that the result above announced was foreclosed in Fitz-Gerald v Hull (1951), 150 Texas

39, 237 S.W. 2d 256. We do not so construe the opinion. Because the court there held that there was no express trust, it was unnecessary to decide the question here presented. Moreover the principles set out herein are, in a large measure, the same as those relied upon in that case.

In the Fitz-Gerald case, the joint adventurers were dealing in oil and gas leases. In violation of his fiduciary duty, one of the members appropriated to himself an oil and gas lease to the exclusion of his associates. Not only that, he took the lease in his own name in violation of his promise to his associates that he would take it in their joint names. In affixing a constructive trust, this Court held:

"Under such state of facts when the petitioner took title to the property in his own name in violation of his promise, and of the original agreement made between the parties, he held the title to an undivided one-half interest for the benefit of, and in trust for, the respondents. This trust arose not because there was any agreement for the title to be taken in the name of petitioner, and the property to be held by him in trust for the respondents—as would be necessary to constitute an express trust —*but, because under the facts, equity would raise the trust to protect the rights of the respondents, and to prevent the unjust enrichment of petitioner by his violation of his promise and duty to the respondents to take title in the name of the three of them, and for their mutual profit and advantage.*" (Emphasis added.) 237 S.W. 2d, at 259.

So here, the Court is not enforcing the parol agreement. It is enforcing a constructive trust arising by operation of law to prevent unjust enrichment obtained through the violation of a fiduciary relationship. The fact that much the same result may be reached is not fatal. The Texas Trust Act itself, as in the case of Sec. 7 of the Statute of Frauds, provides that it does not apply to trusts arising by operation of law; i.e., to constructive and resulting trusts. The authorities set out above so hold. In the cases of Omohundro and Fitz-Gerald, the parties were joint adventurers and both were in a confidential relationship. The duty in each instance is that the property be acquired for mutual profit and advantage. In both instances, the one would be unjustly enrich by his own wrongful act. As stated above, "This rule stated in this Section is applicable where one person agrees to purchase property on behalf of another, whether he undertakes to purchase it in the name of the other, or in his

own name, or in their joint names." Restatement of Trusts Sec. 194.

■ Having decided that Omohundro holds such leases as a constructive trustee, the question arises as to the extent of the interest of Matthews and Thompson in the leases. The courts below have held that they are tntitled to participate equally as partners in the joint venture. This was the result reached by this Court in MacDonald v. Follett and Fitz-Gerald v. Hull, supra, where constructive trusts were affixed in oil-and-gas-lease farmout situations. But Omohundro argues that Matthews and Thompson should be limited to restitution: i.e., to any cash they might have put into the venture and to the reasonable value of their services; and that they are entitled to none of the substantial appreciation in value of the property held in trust.

There are many situations in which restitution of assets amounts to a restoration of the status quo and does equity among the parties. And there are authorities which hold that, in any event, restitution of money advanced is the limit of the recovery permitted.[8]

Omohundro cites 1 Scott on Trusts who says at p. 248:

"A cannot enforce performance of the express trust because of the statute of frauds. But B ought not to be allowed to retain A's land thus by his breach of faith to enrich himself at the expense of A. If he will not perform the express trust, he should be made to recovery the land to A, and to hold it until reconveyance as a constructive trustee for A. A, it is true, may by means of this constructive trust get the same relief that he would secure by the enforcement of the express trust. But this is a purely accidentai coincidence. His bill is not for specific performance of the express trust, but for the restitution of the *status quo.*"

Scott here quotes the above from an article by Ames.[9] But Ames points out that an injustice is done if the trustee is able to profit materially upon a great appreciation in value of the land. Likening the situation to that where, despite the statutes, the courts require reconveyance of land when a deed is found to be a mortgage (and not merely the credit or return of money),

8.—See authorities cited in Ames, "Constructive Trusts Based Upon the Breach of an Express Oral Trust of Land," 20 Harvard L. Rev. 549 et seq. Professor Ames disagrees with this limitation.

9.—*Ibid.,* at 551.

Ames says, "But if the grantor pays or tenders the amount due the grantee, it would be shockingly unjust for the grantee to keep the land. Equity therefore says to the grantee, 'We cannot compel you to perform your promise to recovery, but if you will not keep your word, surrender to the grantor what you received from him on the faith of your promise.' Obviously this reasoning, which justifies the result in mortgage cases, is equally cogent in the cases in which A conveys to B upon an oral trust to reconvey * * *"[10]

We find it unnecessary to lay down any general rule with regard to restitution, because in this case, the status quo of the joint adventurers is that of an equal sharing. The only value given to Humble for the farmout leases was an overriding royalty retained by it and the efforts of the joint venture to obtain production. This came no more from Omohundro than it did from the others. Omohundro's knowledge of the potential value of the leases came from Thompson and Matthews. Those two obtained Sharp and Owen who did the drilling on the Hughes tract. The log of the Sharp well which Omohundro showed to Slick came from Thompson. There is no evidence that any of the three put any money into the venture. Indeed Omohundro was repaid his expenses from the $5,000 the three received from the assignment by them to Owen. A fundamental concept of a constructive trust is the prevention of unjust enrichment.

Under the peculiar facts and circumstances of this case, we think upon the imposition of a constructive trust the courts below correctly adjudged the joint venturers entitled to share equally in the profits deriver from such venture, an equal sharing in the overriding royalty derived from Slick. Such were the results of the imposition of constructive trusts in Fitz-Gerald v. Hull, Smith v. Bolin, and in MacDonald v. Follett, supra.

■ Omohundro's next objection relates to the failure of the trial court to submit special issues which he requested inquiring as to whether Matthews or Thompson used confidential information belonging to others without their consent. The argument is that Matthews and Thompson do not have "clean hands" and so cannot recover. Thompson and Matthews had been employed by companies which had investigated the area for the purpose

10.—*Ibid.*, p. 553. The question of restitution only of money paid into a venture is complicated where the beneficiary pays nothing. For example, A gives money to B to purchase land upon B's oral promise to convey it to C. Or A owns land and conveys it to B upon B's oral promise to convey it to C or to hold it in trust for C. The Restatement says C can enforce a constructive trust if a confidential relationship exists between A and B. Restatement of Restitution, section 183.

of ascertaining its possible productivity. The Court of Civil Appeals held there was no evidence to show that any information which Thompson or Matthews acquired and used was forbidden to them at the time they made use of it. It also held that even if it were forbidden to them, Omohundro would be in no position to complain.

The latter holding of the Court of Civil Appeals properly states the law. It is true, as Omohundro asserts, that one who comes seeking equity must come with clean hands. The rule is not absolute however. As stated in 2 Pomeroy at page 99:

"The party to a suit, complaining that his opponent is in court with 'unclean hands' because of the latter's conduct in the transaction out of which litigation arose, or with which it is connected, must show that he himself has been injured by such conduct, to justify the application of the principle to the case. The wrong must have been done to the defendant himself and not to some third party."[11]

Any improper use of information obtained from their employers by Matthews or Thompson aided rather than injured Omohundro and will not prevent recovery here.

■ Finally, it is contended by Omohundro that the jury's findings to certain special issues are not supported by clear and convincing evidence. This court has no jurisdiction of these questions. The sufficiency of the evidence, in so far as measuring its weight and preponderance, is a question of fact; and this court has no jurisdiction over fact questions. The clear and convincing test is but another method of measuring the weight of the credible evidence, and thus is also a fact question. Sanders v. Harder, 148 Texas 593, 227 S.W. 2d 206.

The judgments of the courts below are affirmed.

Opinion delivered October 5, 1960.

MR. JUSTICE SMITH, joined by JUSTICE GRIFFIN, dissenting.

The dissenting opinion delivered on October 5, 1960, is withdrawn and in lieu thereof the following dissent is respectfully filed.

---

11.—See also 19 Am. Jur. 328, Equity, section 474; 30 C.J.S. 493, Equity, section 98.

The petitioner's motion to disregard the findings of the jury and for judgment non obstante veredicto should have been granted. That motion embraced the first two points now contained in petitioner's application for writ of error. The points are as follows:

## "POINT ONE

"The trial court erred in overruling petitioner's motion for judgment non obstante veredicto and the contentions made therein that the alleged trust which respondents seek to establish and enforce is an express trust created by parol in violation of Section 7 of Article 7425b, commonly known as the Texas Trust Act, and the Court of Civil Appeals erred in not so holding.

## "POINT TWO

"The trial court erred in overruling petitioner's motion for judgment non obstante veredicto and the contention made therein that the undisputed evidence and admissions by each and both of respondents conclusively establish that respondents used confidential information belonging to others without the consent, permission or authority of the true owners of such information, in performing the service which they claim entitles them to the trust upon which their recovery is based, and that respondents have not come into court with clean hands and are barred from any equitable relief by virtue of the doctrine of clean hands, and the Court of Civil Appeals erred in not so holding."

The writ was granted on Poine One. The pertinent parts of the Texas Trust Act, Article 7425b—2 and 7, read:

"Article 7425b-2, Definition of trust.

" 'Trust' for the purpose of this Act means an express trust only, and does not include (1) resulting or constructive trusts."

"Article 7425b-7. Requisites of a trust.

"An express trust may be created by one of the following means or methods:

"A. *A declaration in writing by the owner* [Omohundro] *of the property that he holds it as trustee for another person,*

*or persons,* [Frank D. Matthews, Jr. and Ray James Thompson, Jr.] *or for himself and another person or persons* * * *" [Emphasis added.]

The court states that:

"* * * The question arises whether a constructive trust may be imposed to prevent unjust enrichment of one in a confidential relationship even though such person refuses to perform an unenforceable express trust?"

The court seems to attach some significance to the fact that a constructive trust is not inhibited by the Texas Trust Act. Granting that it is not, I contend that there must be evidence of probative force other than the evidence which has been rendered ineffective by the Act. The evidence simply does not support the court's position. There is no evidence other than the verbal agreement. The verbal agreement is unenforceable in view of the Trust Act. There is substantial authority supporting my contention that: *An unenforceable oral contract cannot be the basis for a constructive trust.*

The legislature adopted a definite policy when it enacted the Texas Trust Act. The statute is clear. No doubt the legislature realized that in some cases to invoke the provisions of the Act an injustice would result. Nevertheless, the question of whether the legislature exercised good judgment in enacting the statute is not for us to decide. Chief Justice Hickman speaking for the court in the case of Upson v. Fitz-Gerald, 129 Texas 211, 103 S.W. 2d 147, properly said:

"Generally, when a court is called upon to enforce a plain, valid statute, it gives no consideration whatever to the question of whether its enforcement appears to work an injustice in the case before it. To determine the wisdom vel non of a statute is not a judicial function. 'Equity follows the law,' is a familiar maxim."

This court cannot give an equitable remedy merely because a legal remedy has been denied the respondents by this statute, and the undisputed facts in this case. A constructive trust, as an equitable remedy is not available to the respondents for the reason that they had a clear legal remedy but for the Texas Trust Act. Principles of law can be best preserved by following prior applicable decisions of this court. Law Review articles, even though written by brilliant authors, have no precedential

value. Justice dictates that it is our duty to follow the law in establishing a remedy. The rules must be declared in the light of the law and not according to our individual notion or sense of what constitutes abstract justice. "Law is the coin from the mint, with its value ascertained and fixed, with the stamp of government upon it which insures and denotes its current value. The act of moulding justice into a system of rules detracts from its capacity of abstract adaptation in each particular case; and the rules of law, when applied to each case, are most usually but an approximation of justice. Still, mankind have generally thought it better to have their rights determined by such a system of rules, than by the sense of abstract justice, as determined by any one man, or set of men, whose duty it may have been to adjudge them." Justice Oran M. Roberts—Duncan v. Magette, 25 Texas 245, 253.

The court admits that under the pleadings of Matthews and Thompson an express trust was created when the parties allowed the leases (the Sharp and Owens transactions) to be placed in petitioner's name. Respondents alleged "pursuant to the wishes of the said Sharp *and the agreement between plaintiffs and defendant* the respective interests of the parties were taken in the name of the defendant * * *" The respondents, however, seek to place themselves without the scope of the Texas Trust Act and the settled law established by the decisions of the courts by taking the position that even though an express trust was established in the present case,[1] a constructive trust may be imposed to prevent unjust enrichment of one in a confidential relationship regardless of the fact that the pleadings and the only evidence show that the relation of trust and confidence was established by parol evidence. This evidence established only an express trust, which is expressly forbidden by Section 7 of Article 7425b of the Texas Trust Act. The respondents seek to establish an interest in land. In order to be successful, such interest must be created or evidenced by an instrument in writing or a constructive trust must be shown. Section 7 of the Texas Trust Act is in substance the same as Section 7 of the English Statute of Frauds. These stautes, as well as those of many other states, require that trusts affecting lands must be created or evidenced by a proper instrument in writing. The general rule is that where the statute of frauds requires trusts to be created or evidenced by writing, an oral agreement or promise to purchase land for another's benefit cannot be enforced as an express trust. We have here an express trust

---

1.—In fact, an express trust was not only pleaded, but was proved and so found by the jury.

which cannot be converted into a constructive trust under the evidence in this case. There was simply no basis for any fiduciary or confidential relationship between the parties at the time petitioner made the agreement with Slick Oil Corporation to assist it in the taking of new leases in the area after the Hughes lease expired on March 24, 1956. By their pleadings and the submission of Special Issue No. 1, inquiring whether or not such (oral) agreement was made, and Special Issues Nos. 2 and 3 as to its duration, respondents conceded that the admittedly oral agreement between the parties was the only basis and foundation of their claim.

The facts in our case do not show the presence of fraud. "A constructive trust generally involves primarily a presence of fraud, in view of which equitable title or interest should be recognized i nsome person other than the taker or holder of the legal title." Our evidence shows and the jury found that under the original agreement, the only controlling agreement, the intent and purpose of the transaction was that petitioner should hold the legal title for the use of respondents and petitioner.

The facts present the exact type of situation that the Texas Trust Act requires to be in writing. In the situation we have here, equity does not intervene. This court has, since the enactment of the Texas Trust Act, drawn the distinction between constructive trusts and express trusts. The purpose of the Trust Act was to prevent unfounded claims to land. Therefore, the requirement that all interests in land and conveyances of such interests be evidenced by instruments in writing. In view of the plain language of Section 7, Article 7425b, supra, and the definition of a constructive trust, this court has drawn a fair and reasonable line between agreements to take title in the names of the members of a joint venture and agreements to take title in the name of one of the parties to hold it in trust for the others. See Fitz-Gerald v. Hull, 150 Texas 39, 237 S.W. 2d 256.

Petitioner, under the pleadings, evidence, and jury findings, had legal and equitable dominion over the Hughes lease at all pertinent times.

The "Owen" well was the last transaction between these parties. Respondents alleged in their petition that a subsequent deal was made with J. P. Owens, and further alleged that "The interests of plaintiffs (respondents) and defendant (petitioner) were taken in the name of E. G. Omohundro, defendant, *in ac-*

*cordance with the original* (oral) *agreement between the parties hereto." Clearly, the same original, broad, oral agreement between the parties constitutes the sole basis for the claim that a joint venture was still in existence after the Owen Well was abandoned.* Admittedly, between the date of abandonment of the Owen well, December 28, 1955, and petitioner's transaction with Slick in March of 1956, there were no joint efforts, and not even a claimed oral agreement, that respondents were to have an interest in the Slick Oil Corporation transaction. Respondents did claim that the original oral agreement was continuous. Hence, there is no basis for any fiduciary or confidential relationship. The trial court erred in failing to grant petitioner's motion for judgment non obstante veredicto since the alleged trust was an express trust created by parol in violation of and was invalid and unenforceable by virtue of Section 7 of Article 7425b, supra. Respondents do not seek to recover the reasonable value of their services (their only investment). They do not seek restitution. They are seeking specific performance of an alleged oral agreement, by the terms of which the petitioner was to take title in his name and hold it in trust for the respondents. Respondents cannot enforce performance of this express trust because of the Statute of Frauds. 1 Scott on Trusts, p. 309. See Wimberly v. Kneeland, Texas Civ. App., 293 S.W. 2d 526, wr. ref. n.r.e.

The answer to the basic question here is that the undisputed facts bring this case within the inhibition of the statute. There is no basis in fact or in law for the statement of the court in the present case:

"So, here, the Court is not enforcing the parol agreement. It is enforcing a *constructive trust arising by operation of law to prevent unjust enrichment obtained through the violation of a fiduciary relationship. The fact that much the same result may be reached is not fatal."* [Emphasis added.]

How, may I ask, can a constructive trust arise by operation of law under the facts in this case? It simply cannot. Under the Texas Trust Act no fiduciary relationship exists. If the unenforceable oral contract did not create the fiduciary relationship between the parties, then what did? Is the so-called partnership based upon a written contract? No. The contract is oral, and unless the fiduciary relationship has been proved by facts or circumstances other than the unenforceable oral agreement, the title to the property involved cannot be legally transferred from Omohundro to the respondents. This court has never said

until the opinion was handed down in this case that the breach of an unenforceable oral contract can be the basis for a constructive trust. The court cites the case of Smith v. Bolin, 153 Texas 486, 271 S.W. 2d 93, in support of its proposition. I agree that Smith v. Bolin is good law, as applied to the facts in that case, but certainly it can have no application here. *The contract in that case did not rest on parol evidence.* Here, the contract rests entirely upon parol evidence. The fact that subsequent to the oral contract, transactions were entered into whereby a farmout was obtained, royalty payments were divided, and a letter of transmittal was written, does not vary the rule that there must be a binding agreement made in advance of the acquisition of title. Clayton v. Ancell, 140 Texas 441, 168 S.W. 2d 230, 233. The contract must be an enforceable one. Whittenburg v. Miller, 139 Texas 586, 164 S.W. 2d 497, 502. In this latter case, the court correctly declared the rule by stating:

"It is the law of this state 'that trusts in lands, as well as those which are created by express contract as well as those which are implied and result by construction of law, are not within teh statute of frauds, and consequently need not be evidenced in writing. *However, where a contract must be proven as a basis for the alleged trust, and such contract rests on parol evidence, the claim to subject land to the trust will fail. * * *'* 42 T.J. Sec. 67, p. 677. *In order that a trust may arise from a contract, the contract must be an enforceable one."* [Emphasis added.]

This rule was well settled oven before the enactment of the Texas Trust Act. See Sorrells v. Coffield, 144 Texas 31, 187 S.W. 2d 980; Miller v. Graves, Texas Civ. App., 185 S.W. 2d 745, wr. ref. Here we have an unenforcceable oral contract to convey land. Under such circumstances, the alleged subsequent partial performance by Omohundro could not have possibly taken it out of the statute, nor could have any degree of performance given rise to a constructive trust. We do not have a factual situation such as contemplated by Mr. Huie when he said: "* * * in many of the situations where an oral express trust was enforced prior to the Act, the Courts will be able to reach the same result now [after passage of the Texas Trust Act] by classifying the trust as resulting or constructive." Surely, Mr. Huie did not mean that a constructive trust could ever be predicated upon an unenforceable oral contract. Not one case decided since the adoption of the Texas Trust Act supports the court's decision. The case of MacDonald v. Follett, (1944), 142 Texas 616, 180 S.W. 2d 334, was decided before

the enactment of the Act. There can be no doubt but that a relation of trust and confidence existed. This court so held, but it must be remembered that had the Texas Trust Act been in effect, the oral agreement would have been unenforceable. If you eliminate the verbal testimony, which the Texas Trust Act and the Statute of Frauds renders ineffective, is there any evidence to support the finding that a relation of trust and confidence existed? There was no such evidence in the Follett case. Of course, the court was not deciding the question in the light of the Texas Trust Act. In view of the holdings in the cases discussed below, it is my opinion that had the Act been in force at the time of the trial of MacDonald v. Follett, supra, the court would necessarily have held that since the agreement was oral, the constructive trust arose out of an unenforceable contract. It was unenforceable [if the Trust Act had been in effect] simply because the fiduciary relationship was proved solely by the verbal agreements between MacDonald and Follett. Partnerships and joint ventures must be based on a valid enforceable contract.

The question in MacDonald v. Follett was: Did the verbal agreement raise an issue for the jury on the question of the existence of a relationship of trust and confidence? Under the then existing law, the question was pertinent. However, in view of the provisions of the Texas Trust Act, that is not the question in the present case. Our question is: Has the fiduciary relationship, the relation of trust and confidence, been established by evidence, either direct or circumstantial, *other* than the unenforceable oral contract? The court has failed to point out such evidence. I repeat, there is no evidence of such character for the court to rely upon.

In the case of Tolle v. Sawtells, Texas Civ. App., 246 S.W. 2d 916, 920, wr. ref., the court held that where the contract is oral and within the Statute of Frauds, it cannot be taken out of the statute on the theory of a constructive trust based merely on the breach of the contract. This court "refused" the application for writ of error. Such action gave the opinion of the Court of Civil Appeals the status of an opinion of this court. It became the opinion of this court. This is significant all the more for the reason that this court approved the construction given the case of Fitz-Gerald v. Hull, 150 Texas 39, 237 S.W. 2d 256, by the Court of Civil Appeals. In the Fitz-Gerald case, the law was clearly declared by Mr. Justice Smedley in a dissenting opinion. The court, speaking through Mr. Justice Griffin, agreed with the dissent, but held that the facts removed the case from

the inhibition of the statute. Mr. Justice Smedley stated in his dissent that the court conceded "that if the agreement had been that petitioner should procure the lease for the three parties, taking title in his own name, it would have been an agreement for an express trust and not enforceable."

Omohundro contends that the court in Fitz-Gerald v. Hull held that if there is an agreement between A and B that B will buy a noil and gas lease in their joint names, and B buys the lease in his own name, a constructive trust arises at the time B acquired title because of the breach of his agreement to take it in their joint names; but no constructive trust arises if A and B agree that B will buy an oil and gas lease with his own money and agrees he will later convey to A an interest therein. This court recognized the distinction between the two situations in Fitz-Gerald, and then certainly by our refusal of the writ in the Sawtelle case we recognized such distinction. In view of these positive decisions, how can this court now say that the case of Mills v. Gray, 147 Texas 33, 210 S.W. 2d 985, is controlling? That case stands principally for the proposition that *the existence of a close family relationship* between the grantor and the grantee is a sufficient basis alone for finding a confidential relationship. In Mills v. Gray, Mrs. Gray, the mother, conveyed to her son, Harry Mills, a house and lot on Broadway Street in Fort Worth to be held by him in trust for the benefit of his mother and his brothers and sisters. The conveyance was made without consideration on a promise by Mills that he would reconvey the property to Mrs. Gray after a divorce was granted in a suit between Mr. and Mrs. Gray. Mills failed to live up to his agreement and suit by Mrs. Gray followed. This was simply not a constructive trust. It was a trust intentional in law and, therefore, a resulting trust. Mills v. Gray was a restitution case. One of the briefs filed in this case after the original opinnion was delivered makes an accurate analysis of the Mills v. Gray case, and I adopt the same here. The writer says:

"* * * The situation is the same as where A gives B money to buy property and B buys the property and takes it in B's name. A having furnished the consideration is the equitable owner and B is the resulting trustee. If A conveys the property to B without consideration, A is in the same situation because in either case it is A's property and B holds the naked legal title as trustee. There are many cases like Mills v. Gray where a man recovers land that he had formerly owned and which was taken from him through breach of promise, fraud, breach

of agency, or some other ground which gives rise to either a suit to cancel or a constructive trust.

"For example, we quote from Faville v. Robinson, 111 Texas 48, 227 S.W. 938:

" 'Where a grant is made on the faith and because of a promise, a breach of the promise is necessarily a fraud, not to be tolerated in equity although the promise be only verbal. In such cases, where the circumstances are such as to deny the right to a rescission, equity will impose a trust upon the property as a means of defeating a fraudulent and wrongful acquisition of the title. In the phrase of Chief Justice Gibson, equity turns the fraudulent procurer of the legal title into a trustee, to get at him. Hoge v. Hoge, 1 Watts (Pa.) 214, 26 Am. Dec. 52'."

See also Binford v. Snyder, 144 Texas 134, 189 S.W. 2d 471; Hall v. Miller (wr. d.w.o.j), 147 S.W. 2d 266; Kirkland v. Handrick (wr. ref. w.o.m.), 173 S.W. 2d 735; Hill v. Stampfli (Comm. App.), 290 S.W. 522; Dyer v. Hardin (wr. ref.), 323 S.W. 2d 119.

Mills v. Gray and the other cases cited above apply to a situation which compels a grantee to restore to the grantor that which the grantee received from the grantor, as the result of a promise which the grantee did not keep.

The court in Mills v. Gray reversed and remanded the case because of an error of the trial court in excluding certain proffered testimony. The court stressed the fact that althongh a parent and child relationship is not intrinsically one of confidence, it does, under circumstances, involve a confidence, and that the abuse of such confidence would give rise to a constructive trust in accordance with an agreement or promise of the grantee to hold in trust or to reconvey.

The court after discussing this and other pertinent principles, held:

"Under these principles, if the *purported agreement and family arrangement* had been established as true, a constructive trust would have arisen by reason of the confidential relationship between the parties which would not fall with in the prohibition of the stautte of frauds or the Texas Trust Act. The testimony was therefore erroneously excluded by the trial court."

In our case, this court has reached a result that the statute

prohibits. There are no independent facts. As said in 49 Am. Jur. Sec. 535, p. 835:

"In earlier cases, courts of equity were perhaps astute in laying hold of circumstances to enforce oral agreements and to take them out of the operation of the statute, but the modern adjudications indicate the opposite tendency as approving the wisdom of the statute and endeavoring to carry out the spirit and intention as well as the letter thereof.

"The modern rule is that before a court of equity will enforce an oral contract coming within the operation of the statute of frauds, such as an oral contract for the sale of an interest in land, or enforce or protect rights asserted on the basis of such an oral contract, there must be collateral circumstances constituting an independent equity, imposing an obligation in conscience upon the party who seeks to invoke the protection of the statute."

The judgments of the trial court and the Court of Civil Appeals should be reversed and judgment rendered that respondents take nothing.

Opinion delivered December 31, 1960.

Rehearing overruled December 31, 1960.