Frank J. MAYKUS, Jr., Appellant,

v.

FIRST CITY REALTY AND FINANCIAL CORPORATION, Appellee.

No. 18343.

Court of Civil Appeals of Texas, Dallas.

Nov. 21, 1974.

Rehearing Denied Jan. 23, 1975.

Charles D. Mayes, Carter, Jones, Magee, Rudberg, Moss & Mayes, Dallas, for appellant.

Ray Besing, Besing & Baker, Dallas, for appellee.

GUITTARD, Justice.

First City Realty and Financial Corporation sued Frank J. Maykus, Jr., to impose a constructive trust on a tract of land which Maykus allegedly agreed to acquire for First City's benefit, but, instead, purchased for his own account. After a jury trial, the court imposed a constructive trust and required defendant Maykus to convey the land to First City on reimbursement of his expenditures. Maykus appeals.

Affirming the judgment, we hold (1) that the letter agreement on which First City sued was effective to create a confidential relationship even though it left the details of the proposed joint venture for future agreement, (2) that the fiduciary duty arising from this confidential relationship was not excluded by a provision limiting the liability of the parties on their failure to sign a joint venture contract to return of two thousand dollars advanced by First City, (3) that the constructive trust remedy is not barred under the "clean hands" doctrine by fraudulent representations, (4) that this remedy is not barred under the Statute of Frauds by insufficient description of the land, and (5) that First City's tender after judgment of the amount of Maykus's expenditures for the land was in compliance with the judgment.

## The Agreement

The material facts concerning the agreement are undisputed, although the witness-

es disagree concerning some of the details. Before the transaction in question, defendant Maykus was one of the general partners in Campana Plaza, a limited partnership engaged in the commercial development of a tract of land fronting the service road of Carpenter Freeway in the city of Irving, Texas. The other general partner was a corporation of which John Kidd and Don Mills were officers and principal stockholders. Kidd and Mills were also officers and principal stockholders of First City Realty and Financial Corporation, the present plaintiff. On several occasions before signing the agreement on November 9, 1971, Kidd and Mills had discussed with Maykus the acquisition and development of two adjoining tracts of land, each containing approximately two and a half acres, lying immediately west of the Campana Plaza property. In one of these tracts, Maykus owned a one-third interest, and the three owners of this tract are sometimes referred to in the record as "S.M.S. Development Company." The other tract, owned by J. C. Brownwell, is the land now in question, on which the trial court imposed a constructive trust. It lay between the "S.M.S." tract and the Campana Plaza property.

In these preliminary conversations, Maykus informed Kidd and Mills that Brownwell had made an oral commitment to give him the "first right of refusal" on the Brownwell tract, and that he thought he could buy the interests of the other owners in the S.M.S. tract. Kidd and Mills told him that they were interested in forming a joint venture with Maykus to acquire and develop these two tracts in a manner similar to the Campana Plaza project. After the conversations, Maykus negotiated with Brownwell acceptable terms for purchase of the Brownwell tract and so notified Mills. Then Mills, who was a lawyer, prepared a proposed "contract of sale" between Maykus and Brownwell and a "letter of intent" to be signed by Maykus and by Mills himself as an officer of plaintiff First City.

We regard these two documents as contemporaneous, since both were signed on November 9, 1971, and the "letter of intent" expressly refers to the "contract of sale." The "contract of sale" provides that Maykus is the purchaser and designates him as "trustee." It recites payment by the purchaser of two thousand dollars and gives him an option to purchase the Brownwell tract within ninety days, and also gives him the right to renew the option for another ninety days on payment of another two thousand dollars. The "letter of intent" is in the form of a letter addressed to Maykus. Its material provisions are as follows:

First City Realty & Financial Corporation ("FCR") is forming an investment partnership to (1) acquire the approximately six (6) acres of undeveloped land (the "Partnership Property") lying along the south boundary of Highway 183 in Dallas County, City of Irving, Texas adjacent to the west of what is commonly known as the Campana Plaza office building complex at 1520 West Carpenter Freeway in Irving, Texas; which acreage is presently owned as follows: approximately 2.8 acres by J. C. Brownwell and approximately 2.8 acres by S.M.S. Development Co. and (2) to develop one or more commercial projects thereon. Ownership of the total acreage and any development thereon will be held initially in a general partnership (the "Partnership") made up of FCR and you. You have agreed to become a member of the Partnership upon its formation, and this letter sets forth our mutual understandings as to the basis on which you will invest and participate in the Partnership.

FCR acting through you as Trustee will acquire the Brownwell 2.8 acre tract in accordance with the terms and provisions of that certain Contract of Sale dated of even date herewith by and between you as Trustee and J. C. Brownwell. FCR will then contribute said tract to the

Partnership. FCR will in addition contribute to the Partnership all necessary equity money to develop the contemplated commercial projects on the Partnership Property which project(s) meet with the approval of FCR.

You will acquire the S.M.S. Development 2.8 acre tract on such terms as will provide a $1.00 per sq. ft. cost basis in the tract and contribute said tract at said cost basis to the Partnership within ninety (90) days from the date hereof.

FCR and you will be responsible individually for meeting whatever obligations are necessary to retain in the Partnership each respective tract. Upon default by either FCR or you in meeting said obligations the party in default will forfeit all interest in the respective tract involved and in the Partnership Property and Partnership entirely.

*You and FCR will within the next ninety (90) days subsequent to the execution hereof enter into a definitive Joint Venture Contract drawn substantially in accordance with the terms and provisions hereof. Failing this you will reimburse FCR the $2,000 option money paid to J. C. Brownell by FCR pursuant to the terms of the above-mentioned Contract of Sale and neither party hereto will have any further liability hereunder, one to the other.* Said Joint Venture Contract shall provide, among other provisions not herein mentioned but by no means hereby excluded, the following terms:

[Here follow nine numbered paragraphs setting out terms of the proposed venture.]

You will keep complete books and records of any of the activities and transactions contemplated hereby. Such books and records are to be available to each of the partners for their inspection at any reasonable time.

If the foregoing represents your understanding of our agreement, and knowing that your acceptance hereof is a material inducement to FCR to pay you $2,000 in cash simultaneously herewith to be applied as the option money on the Contract of Sale for the J. C. Brownwell tract above-mentioned, then please so indicate by signing a copy of this letter and returning it to the undersigned together with a signed copy of the above-mentioned Contract of Sale. [Emphasis added.]

The emphasized language in the fifth paragaph is that on which Maykus relies to establish his contention that the agreement did not amount to a binding contract.

The evidence shows that Mills was present in Maykus's office on the afternoon of November 9, 1971, when Maykus and Brownwell signed the contract of sale, and that Maykus delivered his own check for two thousand dollars to Brownwell as the recited consideration for the option. After Brownwell left, Maykus, at Mills's request, added the word "trustee" after his own signature on the contract and had his secretary type the same word under the signature line. Maykus testified that Mills then delivered to him First City's check for two thousand dollars and presented the letter of intent, which they both then signed.

## 1. Effectiveness of the Agreement

■ Maykus's first point asserts that the letter of intent is unenforceable as a contract because it lacks mutuality of obligation and leaves essential terms to future negotiation. This point is overruled. Even though the letter may have been unenforceable in the sense that it was terminable by either party before signing of a "definitive joint venture contract," it is nevertheless primary evidence of the relationship between them. It states the intention of the parties to form a "partnership" for (1) acquisition, and (2) commercial development, of two particular tracts of land. It establishes that First City is the beneficiary for which Maykus is acting as trus-

tee in signing the Brownwell contract, and provides that the two-thousand-dollar payment is to be applied as option money on that contract. It defines the circumstances under which Maykus will be required to return the two thousand dollars, and provides that under those circumstances neither party shall have any further liability to the other. It specifies the terms on which Maykus agrees to acquire the S.M.S. tract and contribute that tract to the proposed venture. It leaves for future negotiations the ultimate terms of the venture in the development phase, but expressly provides for the contingency that the parties may fail to agree on such ultimate terms.

The letter's lack of completeness with respect to the development phase of the venture does not keep it from being effective with respect to the acquisition phase, since a contract may be enforceable as far as it goes if the parties so intend, even though other matters may be left for later negotiations. Scott v. Ingle Bros. Pacific, Inc., 489 S.W.2d 554, 556 (Tex.1972). From the language of the letter we conclude that the parties intended that it be effective to define their relationship in the acquisition phase of the proposed venture. It appears to have been drawn and signed for that purpose. Certainly, it provides more reliable evidence of the parties' intention than oral testimony of previous or contemporary conversations. In this connection, we agree with Maykus's contention that all prior or contemporary negotiations and promises were merged, as a matter of law, into the letter of intent.

■ Accepting, as we do, the letter of intent as defining the relationship of the parties in the acquisition phase, we hold as a matter of law that the relationship was confidential. This holding follows from two features of the letter of intent, the provision concerning formation of a "partnership" for acquisition as well as development of the land referred to, and the express agreement of Maykus to act as "trustee" for First City in the acquisition of the Brownwell tract. This confidentiality ex-

isted so long as the relationship continued, even though the arrangement may have been terminable at the will of either party. So long as a person acts as trustee, he has the obligations of a fiduciary, even though he may resign or be removed at any time. *See* 4 A. Scott, Law of Trusts § 334, at 2644–48 (3d ed. 1967). Likewise, so long as a joint venture or partnership continues, the participants have a confidential relationship, even though either may terminate the project at will. *See* Johnson v. Peckham, 132 Tex. 148, 120 S.W.2d 786, 788 (1938). Partners and joint adventurers have obligations of loyalty to the common enterprise and of utmost good faith, fairness, and honesty in their dealings with each other in respect to that enterprise, and especially does the party entrusted with conduct of the enterprise have such obligations. Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256, 264 (1951). The actions of such a party must be judged not by the morals of the market place, but by "the punctilio of an honor the most sensitive." Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93, 96 (1954), *quoting* Cardozo, C. J., in Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 546 (1928).

■ Here the letter of intent shows that Maykus was the party entrusted with the conduct of the enterprise. He undertook to act as trustee for First City in acquiring the Brownwell tract, which First City agreed to contribute to the venture, and to use his own funds to acquire the outstanding interests in the S.M.S. tract, which he agreed to contribute to the venture. Even if the parties are treated as prospective joint adventurers rather than as present joint adventurers or partners in the acquisition phase, their relationship was confidential with respect to matters undertaken in furtherance of the proposed venture. Fitz-Gerald v. Hull, *supra*, 150 Tex. at 265, 237 S.W.2d 256.

Maykus argues that the letter of intent cannot be taken as creating a binding obligation in view of the jury's negative answer to Issue No. 1, which inquired wheth-

er "in executing the letter of intent First City and Maykus intended to create obligations which each had a present duty to perform." We cannot give this finding controlling effect. The issue as worded required a negative answer unless the jury should find that Maykus and First City *each* had a "present duty to perform." The jury could well have concluded that First City had no "present duty" because it had already put up its two thousand dollars and had no further duty, at least not until enforceable contracts had been obtained for purchase of both tracts. Consequently, this negative answer is consistent with the existence of a "present duty" of Maykus to purchase the S.M.S. tract and contribute it to the venture, and also with a duty to act as trustee for First City in purchasing the Brownwell tract.

■ Moreover, the obligation of the parties are matters of law to be determined from the language of the document. Burgess v. Sylvester, 143 Tex. 25, 182 S.W.2d 358, 360 (1944); Wynnewood State Bank v. Embrey, 451 S.W.2d 930, 932 (Tex.Civ. App.—Dallas 1970, writ ref'd n.r.e.); Cain v. Tennessee-Louisiana Oil Co., 382 S.W. 2d 794, 799 (Tex.Civ.App.—Tyler 1964) aff'd, 400 S.W.2d 318 (Tex.1966).

We recognize that a jury issue may be presented if the intent is ambiguous. Trinity Universal Ins. Co. v. Ponsford Bros., 423 S.W.2d 571, 575 (1968); *and see* Scott v. Ingle Bros. Pacific, Inc., 489 S.W.2d 554, 557 (1972). Issue No. 1, however, makes no inquiry concerning the intent of any particular language alleged to be ambiguous. It merely asks whether the parties intended by excuting the letter to create present obligations. We hold that this question is a matter of law to be determined by the court, and especially so since obligations of loyalty and good faith are rarely express obligations, but are imposed by law as a result of the confidential relationship. *See* Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401, 405 (1960).

## 2. *The Limitation of Liability*

In several points Maykus insists that the court erred in failing to direct a verdict in favor of First City for only two thousand dollars because the letter of intent expressly limits his liability to two thousand dollars on failure of the parties to enter into a "definitive joint venture contract." He contends that the "failing this" provision in the fifth paragraph of the letter makes the signing of such a contract a condition precedent to any further duty or liability, gives him an unlimited right to withdraw from the venture and deal with the property on his own account, and limits any recovery by First City to the liquidated amount of two thousand dollars.

■ We overrule these points. Although both parties may have had power to withdraw from the venture at any time before signing a "definitive joint venture contract," the "failing this" provision is not reasonably subject to the construction that it permits Maykus to violate his duty of loyalty and good faith by secretly dealing in his own interest with property which the parties had agreed to acquire and contribute to the venture. An agreement by a fiduciary to exclude all fiduciary responsibility is against public policy. *See* Langford v. Shamburger, 417 S.W.2d 438, 444 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n. r. e.). Although Maykus might have been able to relieve himself of any future fiduciary obligation by withdrawing from the venture and tendering back the two thousand dollars, he could not, by so doing, gain any advantage for himself in breach of his duty of loyalty and good faith. That duty exists between joint adventurers even with respect to the transaction which terminates the venture. Johnson v. Peckham, 132 Tex. 148, 120 S. W.2d 786, 788 (1938).

■ We recognize that after termination of a joint venture the confidential relationship ceases and each adventurer is free to act in his own interest. Barnett v.

Matz, 483 S.W.2d 315, 319 (Tex.Civ.App. —Austin 1972, no writ); Giddings Convalescent Home, Inc. v. Wilson, 473 S.W.2d 246 (Tex.Civ.App.—Austin 1971, writ ref'd n. r. e.). However, we do not accept Maykus's view that no confidential relationship could exist after expiration of the ninety-day period without the signing of a joint venture contract. There is evidence tending to show that the confidential relationship continued after that period and existed at the time Maykus sought to acquire the Brownwell tract on his own account. Although the letter of intent set ninety days as the period for entering into a joint venture contract, the Brownwell contract provided for extension of the option for another ninety days on payment of a second two thousand dollars. Both Mills and Kidd testified that after the first ninety-day period expired on February 7, they expected the venture to go through if Maykus could make a deal to acquire the S.M.S. tract on acceptable terms and that Maykus led them to believe that he was still working for the venture. They did not know until later that in January Maykus had acquired the outstanding two-thirds interest in the S.M.S. tract, and, instead of contributing that tract to the venture as he had agreed to do in the letter of intent, had sold it at a substantial profit. Maykus admits that he did not tell Mills or Kidd about these transactions, although he insists that he did not know that the S.M.S. tract was part of the venture and had not read the provisions of the letter of intent concerning that tract because Mills had represented to him that the fifth paragraph was the only provision of the letter that he was concerned about.

On February 6 Mills and Maykus had a telephone conversation concerning extension of the option on the Brownwell tract. According to Mills, Maykus inquired concerning his position in the partnership with respect to the Brownwell tract, and Mills told him that First City would make the option payment on time and "hold it open" for an additional ninety days so that May-kus could get the S.M.S. tract. According to Maykus, he asked what Mills was going to do about the proposed joint venture contract, since if they were not going to enter into a joint venture he (Maykus) would have to raise two thousand dollars to extend the option and would also have to return to First City the two thousand dollars option money he had received from them. He testified that Mills then took the position that First City owned the contract rights to the Brownwell tract and would extend the option by sending its own check to Brownwell.

After this conversation, both Mills and First City sent checks to Brownwell to extend the option, but Brownwell was out of town. Mills testified that on February 12 he had another conversation with Maykus, in which Maykus explained that he had sent his check "to save the deal for us," since he had learned from Brownwell's wife that First City's check had not been received. According to Mills, Maykus again inquired about his position in the Brownwell tract, and when Mills insisted that Maykus had no interest in that tract until he got the S.M.S. tract, Maykus became irate and threatened to "whip" Mills if he "botched his deal up."

Kidd testified that he talked to Maykus on February 14, after Mills had reported this disagreement with Maykus. According to Kidd, Maykus said he no longer wanted to go forward with the joint venture because he had another plan in mind for use of the property. Maykus never told Kidd that he had acquired the S.M.S. tract, but said that he was still having problems with it. Kidd says he did not learn until later that Maykus had already bought and sold it.

When Brownwell returned on February 14 he found both checks, and he telephoned Maykus, who suggested that Brownwell send First City's check to him (Maykus). Brownwell followed this suggestion, and on February 17 Maykus sent a letter to First City stating that since no "definitive

joint venture contract" had been signed, he was tendering back the two thousand dollars option money with the understanding that this payment terminated all rights and obligations under the letter of intent. A cashier's check for two thousand dollars payable to First City was enclosed with the letter, as was First City's check to Brownwell.

When Kidd received Maykus's letter, he immediately replied, rejecting Maykus's interpetration of the letter of intent and returning both checks. First City then filed this suit. After suit was filed, Maykus exercised the option to purchase the Brownwell tract. The deed named the grantee as "Frank M. Maykus, Jr., trustee," in conformity with the original contract.

Thus there is evidence tending to show that after expiration of the ninety-day period, when Maykus had already bought and sold the S.M.S. tract, and at the very time he was attempting to extend the option on the Brownwell tract for his own benefit, he was falsely pretending to be working for the venture. If the testimony of Kidd and Mills is accepted, Maykus was representing to First City that he was still attempting to acquire the S.M.S. tract and also that he had given his own check to Brownwell in order to "save the deal for us." In the light of this evidence we cannot hold as a matter of law that the confidential relationship established by the letter of intent had ended before Maykus sought to extend the Brownwell option in his own interest and induced Brownwell not to accept the check tendered by First City. Consequently, we overrule all of Maykus's points asserting that the trial court erred in failing to direct a verdict in favor of First City for only two thousand dollars.

Maykus complains in his ninth point that the trial court erred in overruling his motion to disregard the jury's finding in answer to Issue No. 4 that a confidential relationship existed "prior to November 9, 1971, and extending until at least February 6, 1972." He argues that there is no evidence to support this finding, but the argument is without merit because, as we have held, the existence of a confidential relationship during this period is established by the letter of intent as a matter of law. This issue is immaterial with respect to the constructive trust question because the crucial issue is not the existence of a confidential relationship before February 6, 1972, but rather whether such a relationship existed later, when Maykus sought to extend the Brownwell option for his own benefit.

### 3. *The "Clean Hands" Defense*

In his twelfth point of error Maykus contends that the verdict will not support a judgment granting the equitable relief of a constructive trust because the jury found that First City was guilty of fraudulent conduct which bars its recovery under the "clean hands" doctrine. This point is overruled because we conclude that the answers to these issues do not establish fraud.

The findings on which this contention is based are (61) that Mills represented to Maykus that his only liability under the letter of intent would be for him to pay two thousand dollars to First City if he and First City did not enter into a written definitive joint venture agreement within ninety days, (62) that such representation was material, (63) that it was made for the purpose of causing Maykus to sign the letter of intent, and (64) that Maykus signed the letter of intent in reliance on the truth of such representation. No issue was submitted inquiring whether this representation was false. We cannot hold that it was false as a matter of law. It was a true representation in the sense that if the proposed venture failed as a result of inability of Maykus to acquire the S.M.S. tract on the terms specified, or if, after acquisition of that tract, the parties should be unable to agree on the terms of the proposed "definitive joint venture contract," Maykus's liability would be limited to two

thousand dollars. It was true also in the sense that even under the trial court's judgment, Maykus has no personal liability other than return of the two thousand dollars, although a constructive trust has been imposed on the tract acquired from Brownwell in violation of Maykus's fiduciary responsibility.

■ Mills's representation, as found by the jury, can be considered false only if construed to mean that Maykus should have no fiduciary responsibility, even though entrusted with conduct of the proposed joint venture and expressly named as "trustee," and that he was free at any time to acquire for his own benefit property that he had agreed to acquire for benefit of the proposed venture. We do not think that Mills's representation can reasonably be so construed, just as we do not think that a similar construction can be given to the "failing this" provision of the letter of intent. Consequently, we hold that no fraudulent representation has been established which would prevent First City from invoking the equitable remedy of a constructive trust.

### 4. The Statute of Frauds Defense

■ In his thirteenth point, Maykus contends that the letter of intent is unenforceable under the Statute of Frauds because it does not contain a sufficient description of the land in question. This point also is overruled. The trial court did not specifically enforce the letter of intent, but rather imposed a constructive trust on the land as a result of Maykus's breach of the fiduciary duty established by the letter of intent and by the Brownwell contract. The Texas Trust Act, Tex.Rev. Civ.Stat.Ann. art. 7425b–2 (Vernon 1960), excludes constructive trusts from its provisions, and, consequently a constructive trust may be imposed even though the result would be similar to enforcement of an unenforceable contract. Omohundro v.

Matthews, 161 Tex. 367, 341 S.W.2d 401, 409 (1960).

■ The case does not fall within authorities holding that for a constructive trust to arise out of an oral agreement, a fiduciary relationship must have existed before and apart from the agreement made the basis of the suit, such as Tyra v. Woodson, 495 S.W.2d 211 (Tex.1973), and Consolidated Gas & Equipment Co. v. Thompson, 405 S.W.2d 333 (Tex.1966). In those cases the Supreme Court held that to enforce an oral agreement to make a future conveyance without a pre-existing confidential relationship would render the Statute of Frauds meaningless. Here the letter of intent, together with Maykus's designation as "trustee" in the Brownwell contract, provides documentary proof of the confidential relationship of a present joint venture and also of a present express trust with respect to the Brownwell tract. For purposes of a constructive trust, such documentary proof is equivalent to evidence of a pre-existing confidential relationship, as required in the cases cited. If a written instrument establishes a person to be a trustee, agent or partner, and he purchases for himself land which he had agreed to purchase for the beneficiary, principal, or partnership, a constructive trust is properly imposed to prevent unjust enrichment, whether or not a pre-existing confidential relationship is shown. See 5 A. Scott, Law of Trusts § 499, at 3540 (3d ed. 1967).

■ Moreover, the description of the land is not fatally insufficient. The letter of intent expressly refers to the Brownwell contract, which contains a fuller description of the land and refers to a certain volume and page of "the maps and plats records in Dallas County, Texas." Any insufficency of this description is now immaterial, since Brownwell voluntarily performed the contract by conveying the land to Maykus, as trustee, by a warranty deed

describing the land by metes and bounds. Edwards v. Strong, 147 Tex. 155, 213 S. W.2d 979, 981 (1948). Consequently, neither the Statute of Frauds nor the Trust Act presents an obstacle to imposition of a constructive trust on the land in question.

### 5. *The Post-Judgment Tender*

In his fifteenth point Maykus contends that the trial court erred in overruling his motion to modify the judgment and reinvest title to the property in him clear of any right of First City because of First City's failure to pay into the registry of the court the $23,956.62 which the trial court ordered it to pay to Maykus. This point also is without merit. The judgment does not order First City to pay the money into the registry of the court. Rather, it orders Maykus within ten days after the judgment to convey the property to First City by special warranty deed, and orders First City on delivery of such deed to pay to Maykus the above amount to cover all payments by him on the Brownwell contract and all taxes, mowing expenses, and other expenditures. The record shows that counsel for First City did tender to counsel for Maykus within ten days of the judgment a cashier's check for the amount specified, but it was not accepted because counsel for Maykus intended to pursue a motion for new trial and an appeal. On such nonacceptance, First City was not required to deposit the money in the registry of the court. Tender to Maykus or his counsel was all that the judgment required, and on his failure to do so, by the terms of the judgment, title then vested in First City, and First City became obligated to pay the money over to Maykus.

Although this opinion does not analyze each of Maykus's points of error separately, we have considered them all and all are overruled.

Affirmed.