WILLIAM CAMERON & COMPANY (INC.) v. J. J. BLACKWELL ET AL.

Decided January 23, 1909.

1.—Limitation—Ten Years Statute—Title.

Peaceable, continuous and adverse possession of land for a period of ten years, by force of art. 3347, Rev. Stats., gives full title to such land, precluding all claims.

2.—Same—Possession—Principal and Agent—Tenants.

Where an agent whose authority is merely to control and lease land for the benefit of the owner, leases the same to tenants who take and hold actual possession thereof, the possession of the tenants is that of the owner and not of the agent.

3.—Same—Possession of Land—Declarations of Agent.

The declarations of an agent, whose authority is limited to the control and leasing of the principal's land, as to the boundaries of the land and the character and extent of the principal's possession, cannot affect the running of the statute of limitation in favor of the principal who is in actual possession of the land in controversy by said tenants.

4.—Principal and Agent—Apparent Authority.

Apparent authority is that authority which an agent appears to have from that which he actually does have, and not from which he may pretend to have, or from his actions on occasions which are unknown to and unratified by his principal.

5.—Same—Authority—Presumption of Knowledge.

One dealing with an agent is bound to a knowledge of the agent's authority, and only such authority may be implied as is reasonably necessary and proper to carry into effect the main power conferred.

6.—Agency—Inconsistent Duties.

A person will not be permitted to take upon himself the character of an agent where, on account of his relation to others or on account of his own personal interest, he would be compelled to assume incompatible and inconsistent duties and obligations.

7.—Same.

Where an agent represented the different owners of adjoining surveys his acts and declarations as to the boundary between the surveys and as to the character and extent of the holding and possession of one of the owners would not be binding upon such owner, and a party dealing with said agent with a knowledge of the agent's attitude becomes a party to the wrong and cannot be benefited thereby.

Appeal from the District Court of Erath County. Tried below before Hon. W. J. Oxford.

*Sleeper, Boynton & Kendall* and *Lee Riddle*, for appellant.—The court erred in its conclusions of fact in finding that J. N. Groesbeeck, Jr., and the firm of Groesbeeck & McClellan were in control and possession of the land in controversy during the particular years under which plaintiff seeks to make out title under the ten years statute of limitation, for the reason that there is no evidence to sustain such finding. Bowles v. Brice, 66 Texas, 724.

An agent to lease land and collect rent, held in adverse possession by his principal, can not affect or destroy the adverse possession of

his principal by declarations or admissions to the effect that such agent or his principal does not claim title to land so held by his principal. Warren v. Frederichs, 76 Texas, 647; Mooring v. McBride, 62 Texas, 309; Hurley v. Lockett, 72 Texas, 267; Blair v. Finlay, 75 Texas, 210; Smith v. Redden, 1 Posey, 360; Reynolds v. Lansford, 16 Texas, 292; McKay v. Treadwell, 8 Texas, 179.

*Martin & George* and *Young & Johnson,* for appellees.

CONNER, CHIEF JUSTICE.—This is an action of trespass to try title instituted in the District Court of Erath County on the 23d day of March, 1907, by the appellant William Cameron & Company against appellees J. J. Blackwell and W. D. Ewers to recover a strip of land two thousand and forty varas in length and one hundred and sixty varas in width, enclosed by E. B. Jones, appellant's vendor, as a part of the north side of the Isaac Aldridge survey, but which is now claimed by appellees as a part of the south side of the T. A. Thompson survey. Appellant asserted title under the ten years statute of limitation. Appellees answered by a general demurrer and plea of not guilty. The trial, which was before the court without a jury, resulted in a judgment for appellees based upon the trial court's conclusions of fact and law found in the record.

From the court's findings and the uncontradicted evidence the following facts are established: In 1893 E. B. Jones, appellant's vendor, purchased the I. Aldridge survey and in the summer of that year proceeded to fence it. Before doing so he had the survey run out by Eli Oxford, the county surveyor of Erath County, who inadvertently located its northeast corner about one hundred and sixty varas north of the true location. By fence built from the northeast corner, as so fixed by Oxford, the land in controversy in this suit was enclosed as part of the I. Aldridge survey. Jones had no purpose to enclose any part of the Thompson, but intended enclosing the I. Aldridge survey only. Jones, after the enclosure stated, remained by tenant in actual possession of all the land included within the boundaries of his fences until the 30th day of June, 1894, when he conveyed the I. Aldridge survey to William Cameron & Company, then a partnership but later incorporated. At the time of this conveyance Jones pointed out to the party acting for William Cameron & Company the I. Aldridge survey and the fences as actually located upon the ground, and his deed to William Cameron & Company conveyed by definite calls all of the land within his enclosure. Immediately after the purchase from E. B. Jones one Skipper, was duly appointed agent of William Cameron & Company, and he continued the occupancy, through tenants, of the land conveyed to his principal until his death some three or four years after, when he was succeeded by J. N. Groesbeck, Jr., a land agent at Stephenville, Texas. Groesbeck's authority was "to look after this land, rent same, collect the rents, pay the taxes and make return to the firm of William Cameron & Company." In the year 1899 Groesbeck formed a partnership with one McClellan and the firm continued, under the authority given to Groesbeck, the control and management of the survey until the year 1905, during which time they, in the

name of and for their principal, continued from time to time to lease the I. Aldridge survey and the premises were, by the tenant of E. B. Jones, tenants under Skipper and under the agents last named, continuously occupied, used and claimed as the property of E. B. Jones and of William Cameron & Company, respectively, from the summer of 1893 until some time in April, 1905, when the fence built by E. B. Jones upon the north line was, without the consent of William Cameron & Company, moved south about one hundred and sixty varas upon the true line of the I. Aldridge survey.

It seems that the mistake in locating the north line of the I. Aldridge upon the Thompson survey was not discovered until some time about the year 1898 or 1899, when Otho Houston, a remote vendor of appellee Blackwell, was negotiating for the purchase of a part of the Thompson survey, then also represented by Groesbeck & McClellan as agents. At this time McClellan called Houston's attention to the fence built by Jones and stated that he thought the fence was wrong, and "that it enclosed a part of the Thompson survey, and that we only claimed for William Cameron & Company the Aldridge and not part of the Thompson." Houston purchased through Groesbeck & McClellan, receiving conveyance which called for the original south line of the Thompson and including the strip of land in controversy in this suit. Houston did not testify, and whether McClellan's statement operated as an inducement in Houston's purchase is not otherwise shown than as may be inferred from the facts we have stated. Houston later conveyed to N. B. Vesey, and Vesey to J. H. Truett, who on October 3, 1905, conveyed to appellee J. J. Blackwell. At and before Blackwell's purchase he declined making it unless he was given peaceable possession of the strip of land in controversy, and it appears that J. N. Groesbeck thereupon directed the removal of the fence south as hereinbefore stated, Groesbeck at the time representing Truett in the sale of the Thompson as well as William Cameron & Company in the capacity before stated. There is no evidence that William Cameron & Company authorized or had knowledge of the statements of McClellan to Houston, or of the removal of the fence, until sometime afterwards, except as authority may be implied from their relation to William Cameron & Company, as stated. Indeed, it was shown that on the 30th of December, 1903, John Groesbeck & Company wrote to William Cameron & Company the following letter: "Some months past we wrote you relative to a conflict of lines between your I. Aldridge survey in this county and the survey in the name of Thomas A. Thompson lying north of the I. Aldridge. We enclose you herewith statement of the surveyor showing conflict. The owner of the Thompson tract wishes you to disclaim and allow them to move their fence on the line. We submit the matter for your consideration, and await further instructions." The record fails to show a written reply to this letter, the testimony being only that Groesbeck soon afterwards stated in answer to inquiries that William Cameron & Company refused to permit the fence to be moved.

The trial court found that Groesbeck and Groesbeck & McClellan had control and possession of the land in controversy for their principal, and concluded that the acts and declarations of said agents

hereinbefore set out were "binding upon their principals, and that the same showed that the possession of their said principals was not adverse possession within the meaning of the law," and hence that appellant was without right of recovery.

Appellant insists under appropriate assignments that the court erred in holding that J. N. Groesbeck and the firm of Groesbeck & McClellan had possession of the land in controversy, or had authority to make the declarations relied upon as defeating appellant's title, and we think these contentions must be sustained. It can not be doubted that E. B. Jones, under a claim of right inconsistent with and hostile to the claim of any other, commenced the actual, visible appropriation and use of the land in controversy in 1893, and that William Cameron & Company, as his grantee, continued by tenants such claim, possession and use for a period of more than ten years prior to the year 1905, when the fence built by E. B. Jones on the Thompson survey was removed by the direction of J. N. Groesbeck. There is nothing in the evidence save the declarations of McClellan and Groesbeck indicating that the claim and possession of William Cameron & Company throughout this entire period was other than adverse within the meaning of our statute (Rev. Stat., article 3349). The statute provides that: "Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims." (Rev. Stat., article 3347.) If, therefore, the possession, cultivation and use of William Cameron & Company, coupled with that of their vendor, was peaceable and adverse for the period of ten years, as alleged by them, they acquired by force of the statute full title to the land in controversy precluding all claims. (Rev. Stats., articles 3343 and 3347.) While it is true that the acts and declarations of a party in actual possession of property is often receivable as illustrative of the character of possession held, yet we think the possession of the land in controversy was that of William Cameron & Company and not of their agent Groesbeck or Groesbeck & McClellan. It is undisputed that the tenants had the actual possession. The constructive possession, if any, was not in those employed merely to control and lease, but in the real owner, William Cameron & Company, and the actual possession of the tenants should be attributed to the owner and not to the agents. In the case of Bowles v. Brice, 66 Texas, 724, one of the contentions, as stated by the Supreme Court, was that "Mrs. Brice having rented and controlled the land from the time of the conveyance from Ivey to her children (minors) up to the date of the suit against her, she was in possession at that date, and the bringing of the suit against her alone, stopped the running of the statute of limitations at that time." The court says: "If she had been the grantee under the Ivey deed, or the tenant of her children, the proposition would doubtless be correct. But she was neither the one or the other. The evidence shows that she procured the conveyance to be made to her children; this is presumed as an advancement to them, and makes whatever title was conveyed by the deed their property. They were

minors of tender years and living with her. Because she let the lands to tenants for their benefit does not make her their tenant; and she was never in actual occupancy herself. Acting as their self-appointed agent and as their natural guardian, the control and management of the property gave her no constructive possession. On the contrary, we think that the tenants would be estopped to deny the agency or the validity of the lease though made for minors; and that their possession would be construed to be the possession of the children." These remarks seem applicable to the case we have before us; so that we think the court's judgment can not be supported on the theory that the possession of Groesbeck and Groesbeck & McClellan was such as to authorize their declarations against the interest of their principal. Indeed, if it be assumed that they had some character of possession, we have been cited to no authority holding that the acts and declarations of agents, such as were Groesbeck & McClellan, are admissible to affect the title of their principal in the absence of ratification with knowledge, or of express authority to make the statement. It seems undisputed that they had no direct authority to make the statements imputed to them, nor does it appear that, with knowledge thereof, appellant acquiesced in or ratified the same, nor were such acts and declarations within their apparent authority. "Apparent authority," say the Supreme Court of North Dakota in the case of Corey v. Hunter, 84 N. W., 570, "is that authority which an agent appears to have from that which he actually does have, and not from that which he may pretend to have, or from his actions on occasions which are unknown to and unratified by his principal." One dealing with an agent is bound to a knowledge of the agent's authority, and only such authority may be implied as is reasonably necessary and proper to carry into effect the main power conferred. In the case of Greene v. Dockendorf, 13 Minn., 70, it was held that a principal was not estopped to deny the right of an agent to sell property merely by entrusting to him the possession or control, so far as necessary for transacting the business of the agency. In Pier v. Duff, 63 Pa. St., 59, it was held that one authorized to sell, but not in actual possession, was a mere broker not even constructively in possession, and that his declarations were not admissible to affect his principal. In Sweeney v. Sweeney, 46 S. E., 76, the Supreme Court of Georgia held that one whose authority in relation to the land there in controversy was "to manage and take care of it—rent it, collect the rents, keep it insured and in repair—manifestly had no power to impair or discredit his principal's title to the property, if he had any, by making statements in disparagement thereof." These cases but illustrate the trend of the great body of the law, which it seems to us forbids an extension of the authority conferred upon Groesbeck & McClellan so as to defeat the title of their principal.

Moreover, if additional reason be needed, Groesbeck & McClellan appear to have been acting as agents for those adversely interested at the time of the declarations and acts made the basis of the court's conclusion. As said by Mr. Mechem in his treatise on Agency, section 66, "A person will not be permitted to take upon himself the character of an agent, where, on account of his relation to others or

on account of his own personal interest, he would·be compelled to assume incompatible and inconsistent duties and obligations." And · again, in section 67: "Wherever, from the nature of his employment, each of two principals with opposing interests is entitled to the benefits of the agent's judgment, discretion or personal influence, he will not be permitted to act as agent of both parties, except with their full knowledge and consent." See also the same author, sections 643 and 798; Armstrong v. O'Brien, 83 Texas, 635. The principal is entitled to the disinterested skill, diligence and discretion of the agent; no man can faithfully serve masters of conflicting interests, and the law does not countenance contracts made by one acting in such dual capacity. Where the person seeking to benefit by the act of an agent so offending knows of the agent's wrongful conduct, he becomes a party to the wrong and can not be aided thereby. The evidence very strongly tends to show, if it does not establish, that both Houston and appellee Blackwell knew that Groesbeck & McClellan were acting in the matter of their several purchases for the owners of the Thompson survey at the very time such agents were discrediting and surrendering the possession of their other principal to the land in controversy. If so, neither Houston nor Blackwell can be heard to claim that in making the declarations and surrender mentioned Groesbeck & McClellan were acting as appellant's agents.

We conclude that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*