**Louis J. GRUNDMEYER et al., Appellants,**

v.

**Nick McFADIN and Paul E. Casseb, Appellees.**

**No. 904.**

Court of Civil Appeals of Texas, Tyler.

May 20, 1976.

Rehearing Denied June 17, 1976.

Pat Maloney, San Antonio, for appellants.

F. W. Baker, Matthew, Nowlin, MacFarlane & Barrett, San Antonio, for appellees.

McKAY, Justice.

Appellants brought suit against appellees seeking to cancel an earnest money contract for the sale of 129.636 acres of land located near the University of Texas at San Antonio. Appellees by cross-action sought specific performance of the contract. After a trial before a jury, the trial court rendered judgment on the verdict for appellants. On its own motion, however, while appellees' amended motion for new trial was pending, the court set aside that judgment and his previous order overruling appellees' motion for judgment non obstante veredicto and rendered judgment non obstante veredicto that appellants take nothing and that appellees have specific performance of the contract. The court did not set aside issue 10 on value. Appellants bring several points on appeal from that judgment.

The tract of land had been owned by Joe Gerfers and his wife, Annie Gerfers, and they operated a dairy there for many years. The Gerfers had three daughters, Adela Gerfers Miller, Meta Gerfers Grundmeyer, wife of Louis J. Grundmeyer, and Nelda Gerfers Breit, who died in 1943 and left one child, Constance Anne Breit Lopez. Joe Gerfers died intestate in 1941. Annie Gerfers died during the pendency of this suit but before trial.

The sellers under the earnest money contract of June 3, 1970, in controversy here, were Adela Gerfers Miller, Meta Gerfers Grundmeyer and husband, Louis J. Grundmeyer, Robert J. Breit, surviving husband of Nelda Gerfers Breit, and Constance Anne Breit Lopez and husband, Alvaro Lopez, appellants. The buyers were Nick McFadin and Paul Casseb, appellees.

All of the sellers except Louis J. Grundmeyer and Robert J. Breit signed a prior earnest money contract in October, 1969, with one Francis by which the sellers agreed to sell the same land for $1,700.00 per acre. The contract with Francis was signed "Mrs. Annie Gerfers, by and through her Atty. in Fact, Meta Gerfers Grundmeyer", and further signed "Estate of Joe Gerfers, Dec. By: Meta Gerfers Grundmeyer, Individually; By: Adela Gerfers Miller, a widow; By: Constance Anne Breit Lopez." This contract was in existence at the time the McFadin and Casseb contract was executed.

In 1966 Annie Gerfers was placed in a nursing home in Boerne because of her physical and mental condition. Gordon Hollon, an attorney at Boerne, was employed to prepare a Power of Attorney from Annie Gerfers to Meta Gerfers Grundmeyer so that Annie Gerfers' Social Security checks could be cashed. The taxes on the land continued to increase and the 1969 contract with Francis to sell the land for $1,700 per acre was executed after conferences between the Grundmeyers and Hollon and the payment of a $1,000.00 fee to Hollon. The sale to Francis could not be consummated, and the Grundmeyers became dissatisfied. Following a recommendation, they employed Robert F. Ritter to help complete the Francis matter.

L. J. Grundmeyer testified that Ritter advised him not to attend a meeting for the purpose of finalizing the Francis contract, and that he should get rid of Hollon; that the site for the University of Texas at San Antonio had been announced ("right across the road from you") and that they should cancel the Francis contract and for him to call the other members of the family and tell them it should be cancelled; that a few minutes later and before he called the others, Ritter called him again and said, "Tell them that I've got some friends of mine, Mr. Casseb and Mr. McFadin, will give them $2,500.00 an acre for that land. And it won't cost them a penny. And we'll get rid of that contract and you'll get your money. That way you'll get your money pretty quick."; that Ritter and Casseb came to his house and looked over the property; that Casseb said he would help Ritter cancel the Francis contract; that "they rushed me into signing it" and that they never told him not to sign it because the Francis contract was still in existence.

The Grundmeyers and Adela Gerfers Miller signed the June 3, 1970, contract in Ritter's office and Breit and the Lopezes signed and returned the contract from California. Casseb signed the contract June 3, 1970, and McFadin on June 15, 1970. A check for $30,000.00 earnest money was delivered to Ritter on June 3, 1970, and Ritter acknowledged receipt for it as "Trustee and Attorney for Buyers."[1]

All parties to the June 3, 1970, contract were aware that Annie Gerfers owned a one-half community interest in the land. She was living at a nursing home in June, 1970, and had no guardian, but the McFadin-Casseb contract, drawn by Casseb, identified Meta Gerfers Grundmeyer as "Guardian of the Estate of Annie Gerfers."[2] The contract in its first paragraph describes Annie Gerfers as "N.C.M."

The jury in its verdict found:

1. That Ritter was acting as the agent of Casseb and McFadin to secure the sale of the Gerfers' property to Casseb and McFadin.

2. That Ritter represented to the Grundmeyers and Adela Gerfers Miller prior to the signing of the June 3, 1970, contract that they would get their money from the sale of the property within 60 to 90 days.

3. That such representation was false.

4. That Ritter knew such representation was false.

5. That such representation was made to induce the Grundmeyers and Mrs. Miller to sign the contract.

6. That the Grundmeyers and Mrs. Miller relied upon the truth of such representation.

7. That such representation was a material inducement but for which the Grundmeyers and Mrs. Miller would not have signed the contract.

8. That Casseb on July 28, 1970, instructed Ritter to cancel the June 3, 1970, contract.

9. That the fact that Ritter was acting as agent for Casseb and McFadin to secure the sale of the property adversely affected either the judgment or the loyalty of Ritter in his representation of the appellants to their detriment.

10. The market value of the property on June 3, 1970, was $2,500.00 per acre.

In their first three points appellants contend that the trial court erred in vacating the judgment first rendered and then rendering a judgment for appellees non obstante veredicto.

In order to sustain the action of the trial court in granting a motion for judgment non obstante veredicto there must be a determination that there is no evidence having probative force upon which the jury could have made the findings relied on. *Burt v. Lochausen*, 151 Tex. 289,

1. "Robert F. Ritter, Trustee and Attorney for Buyers

   Robert F. Ritter"

2. "Meta Gerfers Grundmeyer

   Meta Gerfers Grundmeyer, Individually and as Guardian of the Estate of Annie Gerfers"

249 S.W.2d 194 (1952); *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547 (1962). In passing upon these points the evidence must be considered in a light most favorable to the jury's findings, considering only the evidence and inferences which support the verdict and rejecting the evidence and inferences which are contrary thereto. *Burt v. Lochausen*, supra; *Leyva v. Pacheco*, supra; *Nathan Alterman Electric Co. v. Mason*, 448 S.W.2d 524 (Tex.Civ.App.—San Antonio 1969, no writ). A judgment notwithstanding a jury verdict can only be upheld on appeal when a directed verdict would have been proper. Rule 301, T.R.C.P.; *Braselton Construction Co. v. Anslinger, Inc.*, 503 S.W.2d 368 (Tex.Civ.App.—Corpus Christi 1973, no writ).

We are of the opinion that the evidence, viewed in the light most favorable to the jury verdict, raised the issues submitted to the jury and that the trial court should not have overturned the verdict on the ground that there was no evidence to support it.

Casseb testified that when Ritter moved to the Majestic Building he had an office in the same suite with Casseb and McFadin for several months, then later Ritter moved to an adjoining suite; that Casseb and McFadin gave Ritter and his partner Rivera, "a good deal of business" over the years; that when Casseb referred collection matters to Ritter and Rivera they used a joint letterhead with Casseb's name on it with their own, which arrangement lasted several years, and these joint letterheads "possibly" were being used in June and July, 1970; that Ritter and Rivera moved out of the Majestic Building in 1972, and after that time Casseb employed Rivera on several major cases to help him, and in two cases he hired Ritter and they split the fees, but on collections there were no fees split; that Ritter signed the earnest money contract as "Robert F. Ritter, Trustee and Attorney for Buyers," but his signature and typed name were erased or in some way deleted from the copy of the contract which was filed and recorded by Casseb's secretary at his direction; that Casseb had to sign a form styled "Duplicate Original" at the County Clerk's office so the contract with the deletions could be filed for record; and that Casseb's affidavit stated "I re-executed the copy which has been placed of record. It is an incomplete copy of the original. By executing this copy, I justify its being recorded as a duplicate original."

Mrs. Grundmeyer testified that Ritter told them that they would get the money in 60 to 90 days; that Ritter would not permit them to take a copy of the contract home to study it before they signed it and they did not get a copy after they signed it. She further testified that they received a copy of the contract about a month after signing it and they then learned that there was no provision requiring payment within 60 to 90 days as they expected, nor was there a provision that they should receive no more than 29 per cent cash.

Mrs. Miller testified Ritter told them that if they signed the contract they would get the money within 60 to 90 days; that Ritter told them on June 3, 1970, when they signed the contract that Casseb and McFadin were going to pay him $18,000. She further testified that on July 28, 1970, when she and the Grundmeyers were in Ritter's office, Grundmeyer asked that some parts of the contract be changed and Ritter said, "Well, just cancel it. Mr. Casseb and Mr. McFadin said cancel it." She also testified that she could not swear that Ritter was representing Casseb and McFadin but she thought he was; she said, "he was for them, and he was supposed to be our lawyer."

Appellees contend that there is no evidence that Ritter was acting as agent of Casseb and McFadin to secure the sale of the Gerfers' property to Casseb and McFadin. We disagree.

■■■ The question of agency is one of fact, and the question of agency and the extent of the agent's authority may be shown by circumstantial evidence. *Foundation Reserve Ins. Co. v. Wesson*, 447 S.W.2d 436, 438 (Tex.Civ.App.—Dallas 1969, writ ref'd); *National Guaranty Fire Ins. Co. of Newark, N.J. v. King*, 24 S.W.2d 501, 504 (Tex.Civ.App.—Waco 1929, writ ref'd). Appellees argue that there was no finding that

Ritter was acting within the scope of his actual or apparent authority when he represented to appellants that they would receive their money within 60 to 90 days. Since appellees made no objection to the court's charge that there was no issue on scope of authority, and did not submit a requested issue on the question, they cannot now complain. Rule 279, T.R.C.P. Moreover, there was no objection to the agency issue nor to the definition of an agent as "one who acts in behalf of another under the other's authority and for his benefit."

" 'No evidence' points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact." Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.R. 361 (1960).

■ We are of the opinion that there is more than a scintilla of evidence raising the issue whether Ritter was the agent for the buyers and whether he committed a fraudulent act. Therefore, without passing on the factual sufficiency, we hold there is some evidence of agency and fraud, and the trial court should not have granted a motion for judgment notwithstanding the verdict. In our view, however, the trial court's error in rendering judgment non obstante veredicto does not require reversal of this case under Rule 434, T.R.C.P. We are of the opinion that appellees were entitled to judgment on the verdict because appellants failed to secure a finding of damage.

Appellees maintain that proof of pecuniary loss or damage is essential to appellants' suit to rescind the earnest money contract. We agree with this proposition.

■ The rule followed by the courts of Texas is that in suits for cancellation or rescission of a contract, some damages must be proved, and actionable fraud is fraud from which injury results. *Russell v. Industrial Transp. Co.*, 113 Tex. 441, 258 S.W. 462, 51 A.L.R. 1 (1924); *Bryant v. Vaughn*, 33 S.W.2d 729 (Tex.1930); *Lane v. Cunningham*, 58 S.W.2d 35 (Tex.Comm.App. 1933, holding approved); *Texas Industrial Trust, Inc. v. Lusk*, 312 S.W.2d 324 (Tex. Civ.App.—San Antonio 1958, writ ref'd); *Citizens Standard Life Ins. Co. v. Muncy*, 518 S.W.2d 391 (Tex.Civ.App.—Amarillo 1974, no writ). Loss or damage as a result of fraud is usually pecuniary, but the damage should not be restricted to monetary loss. As pointed out in *Nance v. McClellan*, 126 Tex. 580, 89 S.W.2d 774, 776, 777 (1936, opinion adopted), and *Russell v. Industrial Transp. Co.*, supra, there are some situations where there may be rescission without showing monetary loss.

■ In the case at bar the jury answered issue 10 (which the trial court did not set aside) that the reasonable cash market value of the Gerfers' property on June 3, 1970, the date of the contract, was $2,500 per acre. The earnest money contract provided for payment of $2,500 per acre. The damages plead were for monetary loss. The verdict reveals there was no loss or damage, and appellants make no attack upon the jury's answer to issue 10. The appellants failed to get a finding of any loss or damage, the proof of which was an essential element of their case, and without which they could not recover. The trial court could not render judgment for appellants on the verdict because of the rule which requires the proof of damage before there can be rescission of a contract on the ground of fraud.

In *Bryant v. Vaughn*, supra, is found this language at p. 730:

"The rule in this state is settled that the equitable remedy of cancellation is not available because of fraudulent representation made to induce the execution of a contract unless it be shown in connection therewith that some injury or damage has resulted to the party claiming to be aggrieved. *Russell v. Industrial Transportation Co.*, 113 Tex. 441, 251 S.W.

1034, 258 S.W. 462, 51 A.L.R. 1, and authorities there cited.

"The rule announced in the above case bars defendants in error's right to rescission of the trade in view of the jury's finding that the value of the property received by them was equal to that with which they parted possession. * * *"

By their points 4, 5 and 6 appellants maintain that the equitable remedy of specific performance is unavailable to appellees because they do not have "clean hands". Appellants assert that appellees were guilty of tortious inferences with the pre-existing earnest money contract by failing to perform their duty to inform appellants they had no right to contract with appellees in the face of the Francis contract. We overrule these points. It is undisputed that Casseb had knowledge of the outstanding Francis earnest money contract on June 3, 1970, and that McFadin learned of it later. The record, however, reveals that at the time appellants employed Ritter they were attempting to consummate the Francis contract, and it was only after Ritter had advised them that the Francis contract was void that they signed the Casseb contract.

"A cause of action for wrongful interference with a contract is shown where there have been intentional and willful acts, the acts were calculated to cause damage to the contracting parties in their lawful business and were done with the unlawful purpose of causing damage and loss, without right of justifiable cause on the part of the actor, *and where actual damage and loss resulted*." (Emphasis added.) *Tippett v. Hart*, 497 S.W.2d 606 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e., Tex., 501 S.W.2d 874); 33 Tex. Jur.2d, Interference, Sec. 2, p. 96.

It was held in *Raymond v. Yarrington*, 96 Tex. 443, 73 S.W. 800 (1903), and *Brown Hardware Co. v. Indiana Stoveworks*, 96 Tex. 453, 73 S.W. 800 (1903), that to induce a party to a contract to break it, *to the damage of the other party thereto*, is an actionable wrong.

We are of the opinion there is no interference shown in the instant case. Ritter, as attorney for appellants, advised them that the Francis contract was invalid and unenforceable, as it was determined to be by the courts in *Walzem Development Co., Inc. v. Gerfers*, 487 S.W.2d 219 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.). Injury or damage is an essential element of interference, and appellants have shown none. If there was an injured party in the Francis contract it was Walzem, who succeeded to any right of Francis, and it was Walzem who brought suit against appellants for specific performance of that contract. Assuming, arguendo, that appellees did induce appellants to breach the Francis contract, no damage or injury has been shown to appellants; and, therefore, there was no interference. There is a question whether the Francis contract ever became a contract because one of the essential parties to it, Robert Breit, refused to sign it. Furthermore, as appellants claimed, there was no one competent to contract for the estate of Joe Gerfers, deceased, or for Annie Gerfers, an incompetent, both being necessary parties. Appellants were not parties to the Francis contract. *Walzem Dev. Co. v. Gerfers*, supra, p. 220.

Appellants took the position in defending the *Walzem* suit for specific performance of the Francis contract that (1) the instrument was as a matter of law ambiguous and uncertain and was unenforceable; (2) it was not possible for Walzem to comply with its contractual obligation to give a deed of trust to the entire premises; (3) there is no one competent to contract for the estate of Joe Gerfers, deceased, a necessary party to the contract, or for Annie Gerfers, an incompetent; (4) the contract does not have the certainty required for specific performance; and (5) the doctrine of partial specific performance was not applicable to the case. Appellants ought not to have standing here to take an inconsistent position that there was tortious interference *to their damage* when they denounced the contract in the previous suit.

Appellants insist that *Clements v. Withers*, 437 S.W.2d 818 (Tex.1969), controls the case at bar. We believe there is a distinc-

tion. None of the appellants were parties, individually, to the Francis contract, and as held in *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960), the clean hands rule is not absolute. It is said in *Omohundro* at p. 410:

"The party to a suit, complaining that his opponent is in court with 'unclean hands' because of the latter's conduct in the transaction out of which litigation arose, or with which it is connected, *must show that he himself has been injured by such conduct*, to justify the application of the principle to the case. *The wrong must have been done to the defendant himself and not to some third party*." (Emphasis added.)

It is shown by the record that rather than being injured by the alleged interference with and the later elimination of the Francis contract, appellants benefitted from such alleged interference by obtaining more favorable terms and more money from the Casseb-McFadin contract. The alleged interference of appellees would have to be shown to have been the proximate cause of the breach of the contract had appellants suffered any damage. *Moore v. Sussdrof*, 421 S.W.2d 460 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.).

■ Appellant's point 7 maintains that the trial court erred in not denying specific performance to appellees because, as a matter of law, the earnest money contract shows on its face that it is an attempt by appellees to bind the judicial process, and it is, therefore, void. Meta Gerfers Grundmeyer signed the Casseb contract as "Guardian of the Estate of Annie Gerfers, a widow, N.C.M.", and Meta Gerfers Grundmeyer was not the Guardian of the Estate of Annie Gerfers.

We are cited the case of *Specht v. Collins*, 81 Tex. 213, 16 S.W. 934 (1891), as laying down the rule that a party may not contract to do something which must be approved by a court in that one cannot pledge the course of administration and the orders of the court. In *Specht* the surviving husband contracted to sell lands which were owned by his deceased wife "as soon as administration is had upon said estate". The court held that the husband "had no power, in the absence of facts that would give him sole control of the estate, to make a contract that would bind the estate, and bind the court, under whose orders the estate should be administered," and if it was intended to bind him "it was contrary to public policy." Other cases are cited which follow and cite *Specht*.

We are of the opinion that the holding in *Specht* is not applicable here. There is authority in Texas that where a contract is void or illegal in part, and a party can prove a complete cause of action without the necessity of and apart from the void or illegal portion of the contract, he is entitled to relief from the courts under the valid portion. *Hazzard v. Morrison*, 104 Tex. 589, 143 S.W. 142 (1912), holds that where a defendant, for herself and as agent for an executor, contracted to convey two adjoining lots, only one of which was owned by her, and the contract for the sale by the executor was unenforceable and void for want of power to convey, the vendee could have specific performance of the contract so far as it provided for the transfer of defendant's lot.

If there was an attempt by appellees to bind the judicial process by preparing a contract which attempted to bind the interest of Annie Gerfers by representing that Meta Gerfers Grundmeyer was the guardian of her estate, when in fact she was not, the illegal transaction will not be a defense to appellees' action for specific performance if appellees do not require any aid from the illegal act to maintain their action. *Morrison v. City of Fort Worth*, 138 Tex. 10, 155 S.W.2d 908 (1941); *Stone v. Robinson*, 234 S.W. 1094 (Tex.Comm.App.1921, jdgmt. adopted); *Norman v. B. V. Christie & Co.*, 363 S.W.2d 175 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.); *Fraley v. Zales Jewelry Co.*, 289 S.W.2d 416, 419 (Tex.Civ.App. —Amarillo 1956, no writ).

The granting clause in the Casseb earnest money contract provides that each of the sellers individually agree to sell to McFadin and Casseb the 130 acre tract of land.

There was no language that any of them was selling his or her undivided interest. Since at the time of trial Annie Gerfers was deceased and appellants, therefore, owned the 130 acres, the guardian question no longer existed and the contract bound appellants individually to sell their respective interests. Appellees may secure the specific performance relief without regard to the allegedly illegal portion of the contract. Point 7 is overruled.

By points 8 and 9 appellants contend that, as a matter of law, the contract shows on its face that Ritter was the attorney for the sellers and attorney for the buyers, and that such dual representation, being unknown and unauthorized by appellants, rendered the contract invalid and void. We overrule these points.

We are cognizant of the rule that an agent may not act in behalf of another whose interest is adverse to that of his principal, or act in a dual capacity for two principals unless both principals, with full knowledge of the facts, consent to such representation. *Armstrong v. O'Brien*, 83 Tex. 635, 19 S.W. 268, 274 (1892); *William Cameron & Co. v. Blackwell*, 53 Tex.Civ. App. 414, 115 S.W. 856, 858 (1909, no writ); *Liverpool & London & Globe Ins. Co. v. McCollum*, 149 S.W. 775, 777 (Tex.Civ.App. —Amarillo 1912, writ ref'd); *Jines v. Astle*, 170 S.W. 1081 (Tex.Civ.App.—Amarillo 1914, no writ); *Keitt v. Gresham*, 174 S.W. 884 (Tex.Civ.App.—Ft. Worth 1915, no writ); 2 Tex.Jur.2d, Agency, Sec. 111, p. 558 (1959).

The rule was expressed by the court in *Cunningham v. Price*, 253 S.W. 337, 338 (Tex.Civ.App.—San Antonio 1923, writ dism'd), as follows:

"It is, of course, thoroughly settled as a general rule that an agent of one may not act for another whose interest is adverse to that of his principal, if his dual agency requires or tempts him to do incompatible things. But it is almost as well settled that this rule does not apply where the principals are aware of the facts of the dual relation assumed by the agent, in which event they are bound by his acts in their behalf."

While it is unquestioned that an agent owes a high degree of loyalty to his principal, including a duty of full disclosure of material facts, this would be especially true in case of a dual agency where the agent is representing both parties. *Guisinger v. Hughes*, 363 S.W.2d 861 (Tex.Civ. App.—Dallas 1962, writ ref'd n.r.e.). While Ritter signed the contract as attorney for the sellers and as trustee and attorney for the buyers, there is no evidence he ever actually represented appellees as an attorney at any time in connection with the sale or the contract. A letter agreement, executed the same day as the contract and signed by all appellants and appellees, provided that as a part of the consideration for the sale of the property appellees would reimburse appellants for attorney's fees and costs necessary to deliver marketable title to the property. Ritter was appellants' attorney, and he and appellees agreed a reasonable fee for Ritter's work would be $18,-000. Ritter did serve as trustee and received the $30,000 earnest money, but his services as an attorney were performed, or were to be performed, for appellants and the record does not disclose any conflict of interest. It was advantageous to appellants to have the Francis contract cancelled so that the sale to appellees could be consummated. If it could be said that Ritter was an attorney for or an agent for appellees while serving as attorney for appellants, the record shows that appellants had knowledge of it and consented to it. Points 8 and 9 are overruled.

Appellants' tenth point alleges that the trial court erred in not denying specific performance to appellees because appellees were guilty of barratry as a matter of law under the statute then in effect. Tex.Penal Code Ann., Article 430 (repealed, Acts 1973, 63rd Leg., ch. 399, section 3). Appellants' points eleven through fourteen allege that the trial court erred in refusing to submit appellants' requested special issues A, B, C and D concerning the commission of barra-

try by appellees. We do not agree with appellants' contentions.

It appears that by letter of June 3, 1970, appellees agreed to reimburse appellants their reasonable attorney's fees charged to them by Ritter for services rendered or to be rendered in connection with clearing the title to the property. The letter bears the signatures of appellants agreeing to and authorizing this arrangement. Subsequently, appellees and Ritter agreed that eighteen thousand dollars ($18,000.00) would be a reasonable fee for Ritter's services. Appellants contend that by these agreements appellees were encouraging litigation to cancel the Francis contract in violation of Article 430.

■ In reviewing points eleven through fourteen the rule is that the trial court has a duty to submit all controverted ultimate fact issues raised by the pleadings and the evidence. Rules 277 and 279, T.R.C.P. In our opinion, however, there is no evidence of barratry in the record which would require submission of appellants' requested issues.

■ Article 430 is lengthy and embraces several groups of facts, each group independently constituting the offense of barratry. Appellants have failed to specify which group of facts was violated by appellees, but consideration of the entire article reveals an absence of evidence as to at least one essential element of each group of facts constituting barratry.

The letter agreement to reimburse appellants states that reimbursement of Ritter's fees constituted a part of the consideration for the sale of the property. The purpose of the agreement was to reimburse appellants for expenses incurred in clearing title to the property so that they could deliver marketable title as required by the contract. There is no evidence that appellees participated in the bringing of a suit with the intent to distress or harass anyone. In fact, the record shows that the assignees of Francis instituted the previous suit against appellants seeking specific performance. Appellants were the defendants in the prior

suit in which the Francis contract was cancelled. Moreover, Ritter had been discharged by appellants prior to the suit brought by the assignees of Francis and did not participate therein.

The record also shows that appellees had an interest in the subject matter of the prior suit by virtue of the earnest money contract dated June 3, 1970. Furthermore, appellees were not causing a false suit to be brought because the position of appellants in the prior suit was upheld and the Francis contract was cancelled by a decree of the court. Lastly, there is no evidence that appellees were soliciting employment. On the contrary, they were offering to reimburse the fees charged by Ritter who at the time had already been retained by appellants.

Appellants' points 11 through 14 are overruled. Our discussion of points 11 through 14 is also dispositive of appellants' point 10 which is overruled.

Judgment of the trial court is affirmed.